UNITED STATES of America,
Plaintiff-Appellee,

v.

FORTY–FIVE THOUSAND NINE HUNDRED FORTY DOLLARS ($45,940) IN UNITED STATES CURRENCY (Terry C. McKay, Claimant), Defendants-Appellants.

No. 1329, Docket 84–6012.

United States Court of Appeals,
Second Circuit.

Argued June 7, 1984.

Decided July 11, 1984.

Kenneth A. Cohen, Niagara Falls, N.Y. (Gellman, Cohen & Grasmick, Niagara Falls, N.Y., of counsel), for defendant-appellant Terry Claude McKay.

George A. Yanthis, Asst. U.S. Atty., N.D.N.Y., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Albany, N.Y., of counsel) for plaintiff-appellee United States.

Before OAKES and WINTER, Circuit Judges, and MISHLER, District Judge.*

MISHLER, District Judge:

Terry E. McKay appeals from a judgment of the United States District Court for the Northern District of New York, Neal P. McCurn, J., granting the government's motion for judgment on the pleadings. The basis of Judge McCurn's decision is that Terry McKay is a fugitive from justice and is therefore disentitled to call upon the resources of the court for determination of his claims in the related civil forfeiture proceeding. For the reasons stated below, we affirm the judgment of the district court.

## FACTS

On May 20, 1981, Terry C. McKay, a Canadian resident, entered the United States at Churubusco, New York. The road he was travelling on did not lead to a border inspection station. He was stopped by a border patrol agent who directed McKay to follow him to the Champlain, New York Port of Entry. At the border station, McKay completed a customs declaration report as required under 31 U.S.C. § 5316 (formerly U.S.C. § 1101).[1] The government alleges that this report contains a material misstatement because McKay did not report being in possession of more than $5,000 when he crossed the border in violation of 31 U.S.C. § 5316. The government contends that this violation subjects the $45,490 to forfeiture under 31 U.S.C. § 5317(b).[2] McKay admits having the $45,490 in his possession when he crossed the border but denies making a

material misstatement in the report at the border station.

After filing the report, McKay was charged with entering the United States without inspection because he had been originally travelling on a road that did not lead to a border station. He pled guilty, served ten days in jail, and was involuntarily deported at the request of the United States on June 19, 1981. On September 24, 1981, McKay submitted a petition for the remission of the forfeited $45,490. After receiving the petition for remission of forfeiture, the United States Customs Service referred the matter to the United States Attorney's Office for the Northern District of New York.

On October 14, 1981, a federal grand jury sitting in Albany, New York returned an indictment charging McKay with violating 18 U.S.C. § 1001 in making a false statement to the United States Customs Service when he entered the United States from Canada. The indictment charged that McKay stated that he did not possess over $5,000 when he actually possessed $45,940. The United States instituted this action on November 12, 1981 to enforce forfeiture of the $45,940 pursuant to 31 U.S.C. § 5317(b).

McKay filed a claim for the currency on December 21, 1981 and answered the complaint on April 30, 1982. McKay also filed a motion to stay the forfeiture action pending resolution of his petition for remission of forfeiture. Judge McCurn denied that motion on April 17, 1982.

While the civil forfeiture case was progressing, McKay refused to appear at his

---

* Honorable Jacob Mishler, United States District Judge, Eastern District of New York, sitting by designation.

1. 31 U.S.C. § 5316 provides in pertinent part:
   (a) ... a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent or bailee knowingly—
   (1) transports or has transported monetary instruments of more than $5,000 at one time—
   (A) from a place in the United States to or through a place in the United States; or

(B) to a place in the United States from or through a place outside the United States; or
(2) receives monetary instruments of more than $5,000 at one time transported into the United States from or through a place outside the United States.

2. 31 U.S.C. § 5317 provides in pertinent part:
   (b) A monetary instrument being transported may be seized and forfeited to the United States Government when a report on the instrument under section 5316 of this title [31 U.S.C. § 5316] has not been filed or contains a material omission or misstatement.

arraignment on the criminal charge. He refused to appear at his arraignment on the ground that to do so would be in violation of the immigration laws because of his prior deportation. The Department of Justice, through the United States Attorney, informed the court and McKay's attorney that if he entered the United States for his arraignment, the government would not prosecute him for any violation of the immigration laws. The government contends that violating 18 U.S.C. § 1001 is not an extraditable offense and McKay's refusal to reenter the United States and appear at his arraignment classifies him as a fugitive, resulting in a waiver of his rights to defend the related civil forfeiture proceeding. McKay asserts that the offense is extraditable. He argues that because the government failed to take the necessary steps to extradite him, he retains his right to participate in the civil forfeiture proceedings.

In a memorandum of decision and order dated October 3, 1983, Judge McCurn granted the government's motion for judgment on the pleadings, Fed.R.Civ.P. 12(c) in this civil forfeiture proceeding unless McKay appeared within thirty days at his arraignment in the criminal proceeding. McKay never appeared at his arraignment and Judge McCurn's judgment became final on November 2, 1983. McKay now appeals from that judgment on the grounds that he was deprived of his property without due process of law and that there were material issues of fact in dispute making application of Rule 12(c), Fed.R.Civ.P., inappropriate.

### DISCUSSION

This case presents us with two primary issues: whether McKay is a fugitive from justice and if so, whether such status bars him from defending the related civil forfeiture proceeding.

### I.

McKay has refused to appear at his criminal arraignment. He contends that he is not a fugitive from justice because he was involuntarily deported from this country by the United States Department of Justice, Immigration and Naturalization Service and was prohibited from reentering the United States for one year following the deportation pursuant to 8 U.S.C. § 1182(a)(16) and thereafter by 8 U.S.C. § 1182(a)(17).

Title 8 U.S.C. § 1182 provides in pertinent part:

(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States.

(16) Aliens who have been excluded from admission and deported and who again seek admission within one year from the date of such deportation, unless prior to their reembarkation at a place outside the United States or their attempt to be admitted from foreign contiguous territory the Attorney General has consented to their reapplying for admission;

(17) Aliens who have been arrested and deported, or who have fallen into distress and have been removed pursuant to this chapter or any prior act, or who have been removed as alien enemies, or who have been removed at Government expense in lieu of deportation pursuant to section 1252(b) [8 U.S.C. § 1252(b)] of this title, and who seek admission within five years of the date of such deportation or removal, unless prior to their embarkation or reembarkation at a place outside the United States or their attempt to be admitted from foreign contiguous territory the Attorney General has consented to their applying or reapplying for admission; [3]

---

**3.** 8 U.S.C. § 1182(a)(17) was amended by P.L. 97–116 to restrict its applicability to aliens who seek to reapply for admission within five years of deportation. H.R.Rep. No. 264, 97th Cong. 1st Sess., *reprinted in* 1981 U.S.Code & Cong.Admin.News, 2589. The amendment became effective on December 29, 1981.

Subsection 16 concerns aliens who have not been admitted into the United States and, rather than holding deportation proceedings, the Immigration and Naturalization Service conducts an exclusion hearing [4] and, if appropriate, expels them to their native country (i.e., Canada or Mexico).[5] Such aliens are barred from admission (without prior consent of the Attorney General) for only one year. *See generally Landon v. Plascencia,* 459 U.S. 21, 26 n. 4, 103 S.Ct. 321, 326 n. 4, 74 L.Ed.2d 21 (1982); H.R.Rep. No. 264, 97th Cong. 1st Sess., *reprinted in* 1981 U.S.Code & Admin.News, 2577, 2589. This subsection is not relevant to McKay because he was involuntarily deported, not excluded. Subsection 17 appears to be relevant to McKay's status. He was arrested and deported. If he had sought to reenter the United States, then he would have had to comply with subsection 17 and the rules promulgated by the INS to administer it. These rules, codified in 8 C.F.R. § 212.2(b) provide in pertinent part:

> (b) *Alien applying to consular officer for nonimmigrant visa or nonresident border crossing card.* Permission to reapply for admission to the United States after deportation or removal, within five years of the date of such deportation or removal for an alien who is applying or will apply to a consular officer for nonimmigrant visa or nonresident border crossing card, shall be requested through the consular officer and may be granted only in accordance with section 212(a)(17) [8 U.S.C. § 1182(a)(17) ] and (d)(3)(A) [8 U.S.C. § 1182(d)(3)(A) ] of the Act and § 212.4 [8 C.F.R. § 212.4] of this part. However, the alien may apply for such permission on Form I–212....

■ Subsection 17 and 8 C.F.R. § 212.4(b) provide that an alien who has been arrested and deported and who seeks to reenter the United States seek permission to reapply for admission through the United States Consulate which then makes a recommendation to the Attorney General. The Attorney General decides whether to grant the alien permission to apply for admission. *See Landon, supra,* 459 U.S. at 26 n. 4, 103 S.Ct. at 326 n. 4; *Der-Rong Chour v. INS,* 578 F.2d 464, 468 (2d Cir. 1978), *cert. denied,* 440 U.S. 980, 99 S.Ct. 1786, 60 L.Ed.2d 239 (1979). This requirement is valid under Congress' broad power to control the admission of aliens. *See generally Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972). "[I]n the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (quoting *Mathews v. Diaz,* 426 U.S. 67, 80, 96 S.Ct. 1883, 1891, 48 L.Ed.2d 478 (1976)). The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Id.* (quoting *Shaughnessy v. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953) (other citations omitted)). *See also Bertrand v. Sava,* 684 F.2d 204, 209–212 (2d Cir.1982). Imposing the burden on an alien, who has been previously deported, to affirmatively seek permission in the United States Consulate is within Congress' broad power to control immigration and naturalization. The INS regulation, 8 C.F.R. § 212.4 is consistent with the Congressional mandate.

■ McKay never contacted the United States Consulate to seek application for admission to the United States to appear at his arraignment. McKay's contention is that the United States must seek to extradite him pursuant to the Treaty of Extradition between the United States of America

---

**4.** The differences between exclusion and deportation proceedings are described in *Landon v. Plasencia,* 459 U.S. 21, 25–27, 103 S.Ct. 321, 325–26, 74 L.Ed.2d 21 (1982); *see also Augustin v. Sava,* 735 F.2d 32, 36 n. 8 (2d Cir.1984); *Jean v. Nelson,* 727 F.2d 957, 961 n. 1 (11th Cir.1984).

**5.** An alien can challenge an exclusion order only by a petition for a writ of habeas corpus, 8 U.S.C. § 1105a(b). *Landon, supra,* 459 U.S. at 26 n. 4, 103 S.Ct. at 326 n. 4.

and Canada, 27 U.S.T. 983, T.I.A.S. No. 8237.[6] McKay's argument is inconsistent with subsection 17 and 8 C.F.R. § 212.4. The burden is on McKay to seek permission to apply for admission to the United States, even for the limited purpose of appearing at his arraignment. The government argues that McKay's failure to undertake such action requires the court to consider him a fugitive from justice.

McKay further contends that he is not a fugitive from justice because he was "involuntarily deported" by the INS. This circuit recently stated that the

> intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending. *Matter of Assarsson*, 687 F.2d 1157, 1161–62 (8th Cir.1982); *United States v. Ballesteros-Cordova*, 586 F.2d 1321, 1324 (9th Cir.1978). This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of charges while legally outside the jurisdiction, "constructively flees" by deciding not to return. *Jhirad v. Ferrandina*, 536 F.2d 478, 483–84 (2d Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976) (Jhirad II).

*United States v. Catino*, 735 F.2d 718, 722–723 (2d Cir.1984). McKay is free to move around Canada. Though he had notice of the criminal proceeding, he has not reported to the United States Consulate in accordance with 8 U.S.C. § 1182(a)(17) and 8 C.F.R. § 212.4. We find that McKay is a fugitive from justice.

## II.

■ The government argues that if McKay is a fugitive from justice, then he is not entitled to defend the related civil forfeiture proceeding. In *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) the Supreme Court confronted a situation where the criminal defendant escaped while his direct appeal was pending decision of the Court. Consequently, the Court summarily and unconditionally dismissed the appeal:

> No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims. In the absence of specific provision to the contrary in the statute under which Molinaro appeals, 28 U.S.C. § 1257(2), we conclude, in light of the *Smith [v. United States*, 40 to 97, 94 U.S. 97, 24 L.Ed. 32 (1876)] and *Bonahan [v. Nebraska*, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887)] decisions, that the Court has the authority to dismiss the appeal on this ground,

---

**6.** 27 U.S.T. 983, TIAS 8237, Article 2 provides:

(1) Persons shall be delivered up according to the provisions of this Treaty for any of the offenses listed in the Schedule annexed to this Treaty, which is an integral part of this Treaty, provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year.

(2) Extradition shall also be granted for attempts to commit, or conspiracy to commit or being a party to any of the offenses listed in the annexed Schedule.

(3) Extradition shall also be granted for any offense against a federal law of the United States in which one of the offenses listed in the annexed Schedule, or made extraditable by paragraph (2) of this Article, is a substantial element, even if transporting, transporta-

tion, the use of the mails or interstate facilities are also elements of the specific offense. The treaty further provides in Article 10:

(1) Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found ... to justify his committal for trial if the offense of which he is accused had been committed in its territory.

*See generally Kear v. Hilton*, 699 F.2d 181 (4th Cir.1983).

The Schedule appended to the treaty includes the extraditable offense of

19. Making a false affidavit or statutory declaration for any extrajudicial purpose.

We do not decide if violation of 18 U.S.C. § 1001 is an extraditable offense under the treaty.

*Id.* at 366, 90 S.Ct. at 498–99; *see United States v. Baccollo,* 725 F.2d 170, 171–72 (2d Cir.1983).

The Supreme Court has never extended *Molinaro* to civil matters relating to the criminal fugitive. Recently, Justice Rehnquist, acting as Circuit Justice, in refusing to stay the applicant's dismissal in *Conforte v. C.I.R.,* 692 F.2d 587, 589–90 (9th Cir.1982) stated that "[w]hile this Court has never extended the 'fugitive from justice' rule beyond the facts of *Molinaro* and *Smith* (i.g., where the criminal conviction the litigant is a fugitive from is the judgment being challenged on appeal), the court below correctly points out that the Courts of Appeals have done so on a number of occasions. Since we have denied certiorari in this type case in the past, I do not believe it likely that applicant's petition will be granted. *See e.g., Doyle v. Department of Justice,* [668 F.2d 1365 (D.C.Cir.1981) (per curiam), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982)]." *Conforte v. C.I.R.,* 459 U.S. 1309, 103 S.Ct. 663, 664, 74 L.Ed.2d 588 (1983).

In *Doyle v. Department of Justice, supra,* the appellant failed to appear for service of his sentence. A bench warrant was issued for his arrest. Doyle then filed suit under the Freedom of Information Act seeking all Department of Justice records concerning him. The court affirmed the dismissal of Doyle's civil complaint and noted that so long as Doyle "evades federal authority ... he may not demand that a federal court service his complaint." *Id.* at 1365–66 (citing *Molinaro, supra*). In *Broadway v. City of Montgomery, Alabama,* 530 F.2d 657 (5th Cir.1976) the plaintiff sought damages from an alleged illegal wiretap installed by defendant's police officers. The district court granted defendant's motion for summary judgment. The circuit court affirmed because "John L. Broadway, being a fugitive from justice, is not entitled to call on the resources of an appellate court for a determination of his case." *Id.* at 659 (citing *Molinaro, supra*). In *United States Ex Rel. Bailey v. U.S. C.O. of P.M., U.S. Army,* 496 F.2d 324 (1st Cir.1974), a petitioner for a writ of habeas corpus sought relief from an Army regulation, although absent without leave and not in custody. The court affirmed the district court's dismissal of the action on the basis that petitioner could not "invoke the processes of the law while flouting them ... [and] call upon the resources of the Court for determination of his claims.'" *Id.* at 326 (quoting *Molinaro, supra*). Thus, the District of Columbia, the Fifth and the First Circuits have extended *Molinaro* to civil lawsuits where the appellant is a fugitive in a related criminal matter.

The most closely analogous case, however, is *United States v. $83,320 in United States Currency,* 682 F.2d 573 (6th Cir. 1982), where the court refused to extend *Molinaro* to a fugitive who did not appear at sentencing but was challenging the civil forfeiture. The court based its decision on the ground that "the individual accused of the related criminal violation is not necessarily the only individual with a direct, litigable interest in the outcome of the forfeiture action." *Id.* at 576. But in so doing the court did not consider that the government was seeking to dismiss only the fugitive's appeal which would not prejudice any other claimant.

In seeking forfeiture under section 231 of the Bank Secrecy Act of 1970, 31 U.S.C. § 5316,

the Customs Service notifies any person who appears to have an interest in the seized property of the property's liability to forfeiture and of the claimant's right to petition the Secretary of the Treasury for remission or mitigation of the forfeiture. See 19 C.F.R. § 162.31(a) (1982). The regulations require a claimant to file the petition within 60 days. 19 C.F.R. § 171.12(b) (1982).

If the claimant does not file a petition, or if the decision on a petition makes legal proceedings appear necessary, the appropriate Customs officer must prepare a full report of the seizure for the United States Attorney. 19 U.S.C. § 1603 (1982). Upon receipt of a report, the United States Attorney is required

'immediately to inquire into the facts' and, if it appears probable that a forfeiture has been incurred, 'forthwith to cause the proper proceedings to be commenced and prosecuted, without delay.' 19 U.S.C. § 1604. After a case is reported to the United States Attorney for institution of legal proceedings, no administrative action may be taken on any petition for remission or mitigation. 19 C.F.R. § 171.2(a) (1982).

*United States v. Eight Thousand Eight Hundred And Fifty Dollars ($8,850) In United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 2008–09, 76 L.Ed.2d 143 (1983) (footnotes omitted).

These procedures were followed in the instant case. Proper notice was given and McKay was the only claimant. The judgment affects only McKay. He waived his right to due process in the civil forfeiture proceeding by remaining a fugitive.

Judgment affirmed.