Susie SCHUSTER, a/k/a Susie Schuster
Translateur, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 84–5015.

United States Court of Appeals,
Eleventh Circuit.

July 16, 1985.

Jorge Rodriguez-Chomat, Miami, Fla., for plaintiff-appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Michael Paup, Chief, Appellate Section, Tax Div., U.S. Dept. of Justice, Farley P. Katz, U.S. Dept. of Justice, Appellate Section, Carleton D. Powell, Washington, D.C., for defendant-appellee.

Before HILL, KRAVITCH and SMITH*, Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

Petitioner-appellant Susie Schuster, a/k/a Susie Schuster Translateur (Schuster), appeals from an order by the United States District Court for the Southern District of Florida, dismissing without prejudice Schuster's petition for review of a termination assessment of taxes on the ground that she was a fugitive from criminal process and not entitled to invoke the court's jurisdiction. We affirm.

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

*Issues*

We face three issues. First, we must clarify this court's jurisdiction to review the district court's decision in this termination assessment case. Second and most importantly, we discuss the fugitive-from-justice grounds for the lower court's dismissal. Finally, we examine whether Schuster's petition should have been dismissed for untimeliness.

*Background*

Schuster is a Colombian citizen who resided in Dade County, Florida, for approximately 2 years, or until sometime before June 24, 1982, under a student visa. On or about June 24, 1982, an indictment was filed against her, along with some 20 other individuals, in the United States District Court for the Central District of California, for violations of federal narcotics and currency reporting laws, arising from a large scale scheme to launder money from the proceeds of cocaine sales. This money was deposited in banks in California and transmitted to other domestic and foreign accounts. A bench warrant was issued for Schuster's arrest on or about June 24, 1982.

On June 29, 1982, Internal Revenue Service (IRS) agents learned of Schuster's indictment and that, according to a co-conspirator, Schuster was traveling outside the United States on her honeymoon. The next day IRS agents received information that Schuster had contacted the Banco de Iberoamerica in Miami to request that her funds be transferred to Switzerland. On that same day the IRS District Director in Los Angeles, California, mailed Schuster a notice of termination assessment of income tax on the grounds that she was designing to conceal her property or transfer it, thereby tending to render ineffectual income tax collection for the 1982 taxable year.[1] Accordingly, the IRS informed her that her taxable year had been terminated

on June 30, 1982, and that income tax for the first 6 months of 1982 in the amount of $1,250,662.40 was assessed and due immediately. The letter also informed her of her rights to administrative and judicial review.[2] This letter was followed by a second letter 2 days later, dated July 2, 1982, stating the information upon which the IRS relied in making the termination assessment.[3] Both letters were mailed to Schuster's Miami apartment on Brickell Avenue, and both were returned to the IRS unclaimed.

On July 2, 3, or 5, 1982 (the parties disagree as to the exact date), Schuster was arrested in New Zealand at Auckland airport as she was about to board a flight out of that city. The United States sought her extradition, but she successfully resisted in the New Zealand High Court, which ordered her release on or about November 12, 1982. Her present whereabouts are unknown.

In a letter dated July 29, 1982, Schuster's attorney wrote the Assistant United States Attorney in Los Angeles, stating that Schuster's bank account had been frozen and requesting that service of process be served on him as Schuster's attorney. He also stated that Schuster had received no notice of an IRS "levy" and requested another copy of the levy. On August 20, 1982, the attorney wrote the IRS District Director in Miami in a letter referenced "Wrongful Levy On the Account of Susie Schuster" and requesting reconsideration. The next step was Schuster's filing a petition in the court below for review of the termination assessment, which by that point involved IRS levies on four of Schuster's bank accounts.

The Government moved to dismiss twice—on November 2, 1982, and again on September 20, 1983. The second motion was based on the grounds that Schuster was a fugitive from justice and hence, un-

---

1. *See* 26 U.S.C. § 6851(a)(1) (1982). All further code references are to the Internal Revenue Code, title 26, unless otherwise noted.

2. Pursuant to § 7429.

3. *Id.*

der the *Molinaro* theory,[4] outside the protection of the United States courts. The district court magistrate agreed with this theory and recommended dismissal without prejudice. After review, the district court entered an order to this effect.[5] The Government's first motion contended that: (1) Schuster's petition was untimely; (2) she failed to state adequate reasons for administrative review; and (3) the court lacked venue. We address these issues, except for venue which the Government has not mentioned here, beginning with the question of this court's jurisdiction.

## *Opinion*

### 1. *This Court's Jurisdiction*

 "Jeopardy assessment" procedures under section 7429 provide that: "Any determination made by a district court under this section shall be final and conclusive and shall not be reviewed by any other court."[6] However, where the appeal is based on procedural error—*i.e.*, that the district court acted outside its authority, rather than acting erroneously within its authority—this court will review the decision to determine whether such error occurred.[7] The exception applies here, where Schuster is appealing the district court's dismissal for lack of jurisdiction. Neither party contests our authority to review the case.

**4.** *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970).

**5.** *Schuster v. United States,* Order of Dismissal, case No. 82–1986–Civ–JE (Dec. 5, 1983), motion for reconsideration denied (Dec. 16, 1983).

**6.** Section 7429(f).

**7.** *Meadows v. United States,* 665 F.2d 1009, 1012 (11th Cir.1982). *See also Fernandez v. United States,* 704 F.2d 592 (11th Cir.) (review of district court dismissal for untimeliness), *cert. denied,* —— U.S. ——, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983); *Williams v. United States,* 704 F.2d 1222 (11th Cir.1983) (review of district court dismissal for lack of venue). *But see Randazzo v. United States,* 751 F.2d 145 (3d Cir.1984) (refusing review of district court decision denying attorney's fees arising from § 7429 case).

**8.** *Molinaro,* 396 U.S. 365, 90 S.Ct. 498.

### 2. *The Fugitive-from-Justice Theory*

In *Molinaro v. New Jersey,*[8] the Supreme Court held that a convicted criminal whose bail had been revoked because he failed to surrender himself to state authorities, such that the state (New Jersey) considered him a fugitive from justice, and who sought appeal of his conviction, was "disentitle[d] * * * to call upon the resources of the Court for determination of his claims."[9] In *Broadway v. City of Montgomery,*[10] this court's predecessor[11] likewise held that a criminal who had pleaded guilty and then jumped bail and who had been a fugitive from justice for 2 years, was "not entitled to call on the resources of an appellate court for a determination of his case."[12] In *Broadway,* however, the case of which the criminal sought appeal was a related *civil* case against the City of Montgomery, Alabama, and two police officers, for damages and injunctive relief for an allegedly illegal wiretap. From the wiretap resulted evidence of Broadway's cocaine possession, to which charge Broadway pleaded guilty at the close of the state's case, before he jumped bail.

Since there is no question that the civil case here at issue—involving taxes of over a million dollars assessed against a would-be student indicted for laundering revenues received from illegal drug trafficking—is related to the criminal case, both *Molinaro* and *Broadway* constitute strong support for the district court's dismissal.[13]

**9.** *Id.* at 366, 90 S.Ct. at 498.

**10.** *Broadway v. City of Montgomery,* 530 F.2d 657 (5th Cir.1976).

**11.** *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209–11 (11th Cir.1981).

**12.** *Broadway,* 530 F.2d at 659.

**13.** *See also* comments of Rehnquist, Circuit Justice, 459 U.S. 1309, 103 S.Ct. 663, 74 L.Ed.2d 588 (1983), denying application for stay of *Conforte v. Commissioner,* 692 F.2d 587 (9th Cir.1982) (dismissing appeal by fugitive from justice convicted of tax evasion, where appeal of related civil tax assessment sought); *United States v. $45,940,* 739 F.2d 792 (2d Cir.1984) (dismissing appeal of fugitive seeking review of related civil forfeiture proceeding); *Doyle v. Department of*

Schuster contends, however, that these cases do not apply because she is not a fugitive from justice. She contends that fleeing from justice requires proof of *intent* to flee at the time of flight, and that no such proof exists on the record below. While Schuster is correct on the facts—*i.e.,* nothing in the record establishes whether in June of 1982 she intended to flee from the indictment and arrest warrant, or whether she was indeed going abroad on her honeymoon—she is incorrect on the law. The primary case upon which she relies, *Jhirad v. Ferrandina* (*"Jhirad I"*),[14] was revised in a second opinion (*"Jhirad II"*).[15] Both *Jhirad* decisions concern the "fleeing from justice" exception to the criminal statute of limitations. In *Jhirad I* the court held that "the government must show an *intent* to flee from prosecution or arrest before the statute of limitations is tolled." [16] (Emphasis supplied.) However, in *Jhirad II* the court explained that the concept of "constructive flight"—*i.e.,* absence with intent of escaping prosecution, as opposed to flight itself with intent—applied in the case.[17]

■ While the fleeing from justice exception to the criminal statute of limita-

tions does not apply to Schuster's case, which rests on the *Molinaro* theory, the facts in this case would certainly withstand a *Jhirad II* "constructive flight" examination. The record speaks for itself that once Schuster successfully resisted extradition in New Zealand some months after departing this country, she had no intention of returning to subject herself to this country's criminal process. Approximately 3 years have passed and she has still not reappeared to avail herself of this country's judicial system insofar as it might hurt her, but she has had no compunction about requesting the resources of this country's courts insofar as they might help her. She also attempted to transfer her funds to a Swiss bank. Accordingly, whatever Schuster's intent may have been when she left the United States, she has certainly since established her status as a fugitive from this nation's criminal process, particularly as of the moment she chose to resist extradition.[18]

Schuster also attempts to distinguish her case from the *Molinaro* line by pointing out that those cases involved convictions or guilty pleas, whereas she has only been indicted.[19] Schuster's resisting extradition,

*Justice,* 668 F.2d 1365 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982) (dismissing appeal of fugitive seeking review of related Freedom of Information Act request); and *Fratus v. United States,* 496 F.2d 1190, 1191 (5th Cir.1974) (dismissing appeal by fugitive on two unrelated and serious state criminal charges).

**14.** *Jhirad v. Ferrandina* (*"Jhirad I"*), 486 F.2d 442 (2d Cir.1973) (*see* note 15 for subsequent history).

**15.** *Jhirad v. Ferrandina* (*"Jhirad II"*), 536 F.2d 478 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 *reh'g denied,* 429 U.S. 988, 98 S.Ct. 511, 50 L.Ed.2d 600 (1976). The Government discussed *Jhirad II* as well as *Jhirad I* in its brief, but Schuster's counsel made no mention of *Jhirad II* in either his main or reply brief.

**16.** *Jhirad I,* 486 F.2d at 444.

**17.** *Jhirad II,* 536 F.2d at 483. *See also Streep v. United States,* 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895); *United States v. Catino,* 735 F.2d 718 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *United*

*States v. Wazney,* 529 F.2d 1287, 1289 (9th Cir. 1976); and *Donnell v. United States,* 229 F.2d 560 (5th Cir.1956), all concerning the fleeing from justice exception to the criminal statutes of limitations and discussing or mentioning the need to look at the purpose and intent of the fugitive's absence.

**18.** *See Catino,* 735 F.2d 718, where the fugitive, although imprisoned abroad on foreign charges, actively resisted the United States extradition request and stated he would resist all such future requests. The court held this constituted a "constructive flight" from justice, thereby tolling the statute of limitations.

**19.** In this context Schuster cites *United States v. $83,320,* 682 F.2d 573 (6th Cir.1982), in which the court refused to apply *Molinaro* to appeal of a related civil forfeiture case, where the criminal had been arrested for narcotics violations. However, the criminal had pleaded guilty before becoming a fugitive and, more importantly, the civil action was *in rem,* involving funds in which other individuals might have litigable interests. This contrasts with *$45,940, supra,* 739 F.2d 792, in which the court applied *Molinaro*

however, speaks as loudly as any guilty plea in these circumstances.

We hold that the district court properly dismissed Schuster's petition for review of termination assessment, on the grounds that she was a fugitive from justice in a related criminal case and not entitled to maintain this suit.

### 3. *Timeliness*

The Government contends, in the alternative, that dismissal of Schuster's petition was correct since she failed to fulfill the section 7429 statutory requirement that she first request administrative review of the termination assessment before seeking judicial review. In the Government's view Schuster's request for administrative review in the form of her attorney's letter of August 20, 1982, was conclusory, inadequate, and legally insufficient. Thus Schuster's petition for judicial review is untimely,[20] the Government contends, and should be dismissed with prejudice. This contrasts with the district court's dismissal on *Molinaro* grounds *without* prejudice, on the theory that a penitent Susie Schuster seeking to subject herself to this country's criminal process should regain her constitutional right to defend herself in the related civil suit.

While the district court correctly dismissed without prejudice on the *Molinaro* issue, we believe that in these circumstances it would be wasteful of the resources of all concerned to decide now the Government's untimeliness claim, or to remand for further fact-finding on it, in order to determine if dismissal should be *with* prejudice. Schuster has absented herself from this country and its judicial process since June 1982. Should she reappear to submit herself to this nation's criminal process, she may choose to resume litigation in this case. However, she may never reappear, in which case discussion of alternative

grounds for dismissal, albeit with prejudice, of her petition would be futile.

The judgment below is affirmed.

AFFIRMED.

---

where the fugitive was the only claimant, and where the fugitive had been indicted but refused to appear for his arraignment.

**20.** The Government also contends that the August 20, 1982, letter was untimely under § 7429(a)(2) because not submitted within 30 days of the date (July 2, 1982) upon which the IRS gave Schuster reasons for the assessment. However, the Government concedes that this issue would have to be addressed on remand, since Schuster contests some of the facts.