**UNITED STATES of America, Plaintiff,**

v.

**REAL PROPERTY LOCATED AT INCLINE VILLAGE, et al., Defendants.**

**No. CV–N–90–130–ECR.**

United States District Court,
D. Nevada.

Dec. 31, 1990.

---

U.S. Atty. by Will Mattly, Asst. U.S. Atty., Reno, Nev., for plaintiff.

Daniel W. Stewart and C. Frederick Pinkerton, Reno, Nev., for Brian J. Degen and Karyn Degen (claimants to defendant property).

## ORDER

EDWARD C. REED, Jr., Chief Judge.

On October 24, 1989, a federal grand jury in Nevada returned an indictment against Brian J. Degen, charging him in various counts of *United States v. Ciro Wayne Mancuso, et al.*, CR–N–89–24–ECR. A warrant was issued for Degen's arrest. On the same day, plaintiff instituted a civil forfeiture action against certain real property in Incline Village owned by Degen, and possibly, by Degen's wife Karyn Degen, as well. Plaintiff asserts that Brian purchased such property with illegal drug money he obtained in the criminal enterprise alleged in the indictment.

Brian currently resides in Switzerland and is aware of both the indictment and the civil forfeiture action. On April 6, 1990, Donald H. Heller, attorney for Brian and Karyn, filed separate claims for each of them to the property that is the subject of the forfeiture action. Heller also filed answers to the Amended Complaint for Forfeiture on behalf of Brian and Karyn.

Plaintiff filed a motion seeking to strike the claims and answers of both Brian and Karyn, and seeking summary judgment in its favor (document # 8). Plaintiff claims that as a fugitive from justice, Brian is disentitled from appearing in the forfeiture action. The Degens, through Heller, filed an opposition (document # 14). Plaintiff filed a reply (document # 20). Heller, on behalf of the Degens, filed a Request for Oral Argument on the Motion to Strike Claims and Answers and Motion for Summary Judgment (document # 21). On December 27, 1990, this court heard oral argument from both sides on the motion for summary judgment and motion to strike, as against Brian only.

In this Order, we address only the Motion to Strike and Motion for Summary Judgment against Brian Degen. In tackling plaintiff's motions against Brian, we must first determine whether Brian is a fugitive from justice. Brian argues that he left Nevada and the United States for Switzerland before he knew of the indictment against him and before he knew of the civil forfeiture action. That is, he did not flee the country as a result of a criminal case against him.

However, case law indicates that to be a fugitive, a person need not flee the state or country with the intent of avoiding a prosecution or an anticipated prosecution. In *King v. United States*, 144 F.2d 729, 731 (8th Cir.1944), the court held:

> To be a fugitive, ... it is not necessary that the party should have left the state ... where the crime is alleged to have been committed ... for the purpose of avoiding an anticipated prosecution, but that, having committed a crime within a state ..., he has left and is found in another jurisdiction.

In this case, whether Brian left before or after the indictment is irrelevant. Having allegedly committed a crime, Brian left the United States and is in Switzerland.

The Ninth Circuit has adopted the reasoning of the Eighth. In *United States v. Wazney*, 529 F.2d 1287, 1289 (9th Cir.1976), the court held that an intent to avoid prosecution (conferring the "fugitive" status)

could be inferred where the defendant knows that he is wanted by the police and fails to submit to arrest. The Ninth Circuit reaffirmed this decision in *United States v. Ballesteros–Cordova*, 586 F.2d 1321, 1323 (9th Cir.1978) and *United States v. Gonsalves*, 675 F.2d 1050, 1052 (9th Cir.1982). In this case, Brian knows that he is wanted by the police, but refuses to submit to arrest, even though he professes his innocence. Thus, we conclude that Brian Degen is a fugitive.

■ Having concluded that Brian is a fugitive, we now address whether the disentitlement doctrine precludes him from contesting the civil forfeiture action against him. In *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), the Supreme Court refused to adjudicate the merits of an appeal from a criminal conviction because defendant was a fugitive. *Id.* at 366, 90 S.Ct. at 498. The Court held that defendant's status as a fugitive "disentitle[d] [him] to call upon the resources of the Court for determination of his claims." *Id.* Thus, the disentitlement doctrine emerged for criminal proceedings.

In *Conforte v. Commissioner*, 692 F.2d 587 (9th Cir.1982), the Ninth Circuit extended the disentitlement doctrine to a civil proceeding based on a prior criminal conviction. While this extension went beyond a criminal appeal, it did not address whether the disentitlement doctrine applies to a civil forfeiture proceeding. However, the Ninth Circuit addressed that issue in *United States v. $129,374 in U.S. Currency*, 769 F.2d 583 (9th Cir.1985). The court noted:

> The issue before us in this case is one of first impression: whether the *Molinaro/Conforte* disentitlement doctrine should bar intervention in a civil forfeiture proceeding by a fugitive's successor in interest. We conclude that the limited extension of that doctrine to this situation is compelled as a matter of sound policy.

*Id.* at 587. If the disentitlement doctrine bars a fugitive's successor from defending a civil forfeiture proceeding, it surely also bars the fugitive. In fact, the *$129,374* court noted "If the fugitive is deprived of presenting any claim or defense in this action as the result of his fugitive status, the conservator of his estate must suffer the same consequences." *Id.* at 587. Thus, the disentitlement doctrine may apply to Brian Degen.

In opposing plaintiff's motions, Brian asserts that his case differs from *$129,374*. First, he presents many pages of assertions that he acquired the property in question with legitimate funds. This may well be true. However, Brian may not present this argument if the disentitlement doctrine bars him from defending the civil forfeiture proceeding. Whether the disentitlement doctrine applies is a standing issue. Determining the source of funds Brian used to purchase the property goes to the merits of the forfeiture action. Thus, we need not determine the source of funds unless the disentitlement doctrine does not apply to Brian.

Brian also argues that his situation differs from the situation of the fugitive in *$129,374*. In that case, the fugitive was arrested, convicted and released on bond pending sentencing. Before sentencing, the fugitive fled the jurisdiction, with knowledge of the civil forfeiture proceeding. The court held that the fugitive and his successor in interest were disentitled from challenging the civil forfeiture because "the [disentitlement doctrine] should apply *with greater force* in civil cases where an individual's liberty is not at stake." *Id.* at 588.

However, in this case, plaintiff has not obtained a criminal conviction against the civil claimant. Brian argues that this factual variation should render the disentitlement doctrine inapplicable. In *$129,374*, the government had already obtained a criminal conviction against the civil claimant related to the property in question in the forfeiture action. Brian argues that the disentitlement doctrine should not apply when the civil claimant has not been convicted, but only faces an ongoing prosecution, as is the case with him. Brian notes that he was already in Switzerland when he was indicted and when plaintiff instituted the forfeiture action.

In *$129,374*, the Ninth Circuit stated explicitly that it need not decide whether the disentitlement doctrine applies when the fugitive seeks relief from forfeiture in the absence of a prior criminal conviction directly related to the property in question. Further, since *$129,374*, the Ninth Circuit has not addressed the issue. Thus, we must now decide for the first time whether the disentitlement doctrine should apply in the absence of a criminal conviction.

Other circuits have addressed this specific issue, and more generally, in what circumstances the disentitlement doctrine should apply to civil forfeiture proceedings. In reaching their conclusions, other courts have focused on five factors: (1) the policy behind the disentitlement doctrine; (2) the relatedness of the property in the forfeiture action to the crime; (3) the claimant's control over his fugitive status and his ability to assert his rights to the property in question; (4) whether the claimant is a "plaintiff" or a "defendant"; and (5) whether the government obtained a prior criminal conviction against the claimant.

(1) *The policy behind the disentitlement doctrine*—Various courts have offered interpretations of the policy behind the disentitlement doctrine. In *Molinaro, supra,* the Supreme Court announced that an individual should not be able to call upon the resources of a court to determine his claims when he flouts that court's power to prosecute him. In a general sense, Brian is attempting to do just that. He wants this court to listen to his claims in the forfeiture proceeding without subjecting himself to this court's jurisdiction in the criminal matter. On the other hand, Brian has not called upon the resources of the court to determine his claims. The United States has called upon the resources of the court. We will explore this situation in more detail in (4) below.

In *Katz v. United States of America,* 920 F.2d 610 (9th Cir.1990), the court noted that the disentitlement doctrine prevents an individual from attempting to bargain with or obtain a tactical advantage over the court by awaiting a judicial result and returning to the jurisdiction if the result is favorable and remaining a fugitive if the result is unfavorable. That is, a person should not be able to invoke the power of judicial review and obey the order only if the person likes it.

In this case, applying the doctrine to Brian would not further this policy. If we allow him to defend against the forfeiture action, he will not return to this court's jurisdiction after this court reaches a decision, no matter the outcome. He will remain in Switzerland whether or not he forfeits his property. However, this policy would not be furthered even if Brian had already been convicted. In *$129,374*, the convicted claimant would not have returned to the jurisdiction had he been allowed to defend his interests, no matter the outcome. Thus, the Ninth Circuit has already rejected this policy argument.

In *United States of America v. $45,940 in United States Currency,* 739 F.2d 792, 797 (2nd Cir.1984), the court noted that the disentitlement doctrine seeks to prevent a claimant evading federal authority from demanding that a federal court service a complaint the claimant initiated. In this case, Brian did not initiate action in this court. The government initiated the action and claimant seeks only to defend against the action. However, once again, the Ninth Circuit has implicitly rejected this policy argument in *$129,374*. In that case, the claimant attempted to defend a forfeiture action the government instituted. The court refused to allow claimant to defend the action. Thus, whether the claimant has been previously convicted is irrelevant to the fact that he is evading federal authority.

(2) *The relatedness of the property in the forfeiture action to the crime*—In *$129,374*, the Ninth Circuit noted that a person flouting the legal process cannot engage the court's resources to adjudicate his claims in an *action related to* a prior conviction (emphasis added). *Id.* at 587. In that case, the property in question clearly related to the crime. As a result, the court explicitly refused to decide whether the claim must relate to the crime. *Id.* at 588. Thus, we must address this issue.

In *$45,940, supra,* the court applied the disentitlement doctrine to the claimant. In that case, the property in question clearly related to the crime. Similarly, in *United States of America v. One Parcel of Real Estate,* 868 F.2d 1214 (11th Cir.1989), the court applied the doctrine only because the property in question related to the crime charged. However, the court implied that since the fugitive disentitlement doctrine is so broad, the government need only show facially, i.e., without any fact finding, that the property is related to the crime charged. *Id.* at 1216–17.

In *United States of America v. Pole No. 3172,* 852 F.2d 636, 644 (1st Cir.1988), the First Circuit held that the criminal and civil proceedings must relate to each other for the disentitlement doctrine to apply. In refusing to apply the disentitlement doctrine, the court noted: "The two proceedings here—the civil forfeiture and the Florida criminal indictment—may very well be related. At this point, however, we can only speculate as to the contents of that indictment." Thus, the court implicitly agreed with the Eleventh Circuit. The *Pole* court did not apply the doctrine because it could not tell if the proceedings were related. However, it appears that if the *Pole* court had known the contents of the indictment, it would have determined facially whether the criminal and civil proceedings were related.

In this case, upon examining the indictment against Brian and in reading plaintiff's motion, the government alleges that Brian purchased the property it seeks to acquire in the forfeiture proceeding with proceeds of the criminal enterprise charged in the criminal proceeding. Thus, under the standards of the First and Eleventh Circuits, the criminal and civil proceedings are related.

(3) *The claimant's control over his fugitive status and his ability to assert his rights to the property in question*—In defining a fugitive, culpability lies in knowing that a prosecution is pending and refusing to return to the jurisdiction. The Ninth Circuit in *$129,374* noted and relied on the fact that:

[The claimant] ha[d] complete control over the protection of his property interests in this forfeiture proceeding; if he f[ound] his interests [were] sufficiently worth defending, he [could] terminate his fugitive status and present his own defense.... Here, [the fugitive] is solely responsible for his plight.

*Id.* at 587–88. Similarly, Brian Degen is responsible for his own plight, with or without the previous conviction. If he considered his interests important enough, Brian could come back to Nevada, submit himself to the jurisdiction of this court, and defend his action.

In *$45,940, supra,* the government deported claimant from the United States before it began prosecuting him. In claiming that he could not come back to the United States, claimant argued he had no control over his fugitive status. The court rejected this argument, noting that the INS indicated it would not prosecute claimant for violating the immigration laws if he entered the United States to defend himself in the criminal prosecution. Further, claimant could have applied to reenter the country, yet chose not to do so. Thus, the court concluded, since claimant controlled his own status, and chose to evade United States authority, he was subject to the disentitlement doctrine.

Similarly, in *One Parcel, supra,* the court noted that claimant resided in Colombia, and knew of the proceedings in the United States. The court stated that claimant could defend the civil proceeding if he submitted himself to the jurisdiction of the American court.

In this case, Brian clearly has control over his fugitive status. If he wishes to return to Nevada to defend his forfeiture action and submit himself to this court's jurisdiction, nothing is stopping him.

In *Pole, supra,* contrary to the Second and Eleventh Circuits, the First Circuit noted that claimant never controls his fugitive status because he faces the dilemma of not "appearing" and losing because he cannot rebut the government's case. To defend his interests, the First Circuit noted, claimant would have to submit to the court's

jurisdiction. Thus, the court refused to apply the disentitlement doctrine against claimant.

However, the court overlooked that claimant might "appear" in the civil proceeding without physically submitting himself to the court's jurisdiction. For example, claimant could file an affidavit or give his deposition out of the jurisdiction of the court in which the criminal proceeding is pending. Further, the First Circuit relied on the lack of evidence that claimant had notice of the civil proceeding and chose not to defend it, to avoid prosecution. In our case, Brian has notice of both the criminal and civil proceedings, and nonetheless chooses not to appear.

(4) *Whether the claimant is a "plaintiff" or a "defendant"*—In *$129,374*, the court did not decide whether the disentitlement doctrine applies only to those claimants who initiate the civil action (plaintiffs) because the claimant in that case had notice of the already filed forfeiture proceedings, yet voluntarily elected to flee the jurisdiction of the courts. In this case, it appears that Brian left the United States before the government initiated the forfeiture action. Thus, we address the merits of the issue.

In this case, Brian clearly has the status of a defendant. The government initiated the forfeiture proceeding. In making his claim, Brian technically is defending against the civil action. Thus, he is in effect involuntarily involved in the civil forfeiture action.

In *Pole, supra,* the First Circuit likened claimant to a defendant. Like Brian's case, in *Pole,* the government initiated a forfeiture action and claimant intervened to defend against the action. In refusing to apply the disentitlement doctrine to claimant, the court noted that claimant was not in the customary role of a party invoking the aid of a court to vindicate rights asserted against another. *Id.* at 643. Thus, claimant had not invoked the processes of the court.

However, in *$129,374*, claimant also defended against a forfeiture action. Nonetheless, the court applied the disentitlement

doctrine to bar claimant from defending the action. That case involved a prior criminal conviction and Brian's case does not. However, this factual difference does not affect the analysis of whether claimant initiated or is defending against the civil action. Further, in both *$45,940* and *One Parcel,* the courts applied the disentitlement doctrine to bar a claimant who was a "defendant."

(5) *Whether the government obtained a prior criminal conviction against claimant*—In *$129,374*, the Ninth Circuit explicitly refused to decide whether claimant must have suffered a prior conviction to have the disentitlement doctrine applied against him. As previously stated, no court in the Ninth Circuit has since considered the issue.

In *Pole, supra,* the court did not apply the disentitlement doctrine against claimant. In that case, the criminal proceeding against plaintiff was pending at the time of the civil forfeiture proceeding. However, the court did not rely on this circumstance as a basis not to apply the doctrine. Rather, as stated above, the court was more concerned with the relatedness between the property in question and the crime charged.

In both *$45,940* and *One Parcel, supra,* the courts applied the disentitlement doctrine against claimant. In both those cases the criminal prosecution and civil forfeiture proceedings were pending at the same time. Thus, in spite of the fact that no prior conviction existed, the courts applied the doctrine. Significantly, in both cases the property in question was related to the crime charged.

Taking these factors into consideration, we conclude that the disentitlement doctrine should be extended beyond *$129,374* to apply to Brian's case. Of the five factors, the Ninth Circuit in *$129,374* did not decide only the second and fifth. In light of our analyses under those two factors, it appears that the real property in question at least facially relates to the crimes charged. That is, the indictment indicates that Brian purchased the property with proceeds from a criminal enterprise. Thus, we conclude that in this case, the

**314**

disentitlement doctrine bars Brian Degen from defending the civil forfeiture action *in absentia.* He may attempt to show he acquired the property with legitimate funds if he loses his fugitive status.

 Finally, Brian argues that this court has discretion whether to apply the disentitlement doctrine to him. He states that *$129,374* and *United States v. Veliotis,* 586 F.Supp. 1512, 1515 (S.D.N.Y.1984) stand for this proposition. However, *Veliotis* is a district court case from New York. Nothing in *$129,374* indicates that a court has discretion to decide whether to apply the disentitlement doctrine in a civil forfeiture proceeding. We are bound by Ninth Circuit authority. In the absence of Ninth Circuit authority to support Brian's argument, we reject such argument. Thus, absent Brian's return to Nevada, he may not defend against plaintiff's civil forfeiture action.

IT IS, THEREFORE, HEREBY ORDERED that plaintiff's Motion to Strike Claims and Answers and Motion for Summary Judgment are GRANTED against Brian Degen only.