UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF REAL PROPERTY DESCRIBED AS LOT 156 AND THE SOUTH THREE FEET OF LOT 157, VALLEY VIEW ESTATES, A SUBDIVISION, IN THE CITY OF GRANDVIEW, JACKSON COUNTY, MISSOURI, according to the recorded plat thereof, also known as 12325 Jackson Avenue, Grandview, Missouri 64030, and United States Currency in the Amount of $15,645.50, Defendants.

No. 91–0023–CV–W–8.

United States District Court, W.D. Missouri, W.D.

Oct. 25, 1991.

E. Eugene Harrison, U.S. Attorney's Office, Kansas City, Mo., for plaintiff.

Daniel D. Lane, Kansas City, Mo., for defendants.

## ORDER

STEVENS, District Judge.

Plaintiff filed a complaint for forfeiture *in rem* of the defendant properties on January 8, 1991. On February 27, 1991, claims were filed on the defendant properties by Mr. John Edward Johnson ("Johnson"), his former wife Alicia Johnson ("Alicia"), and their daughter Gina M. Zarrin'Kia ("Gina"). The case is now before the court on plaintiff's motion to dismiss the claim of Johnson, plaintiff's motion to dismiss the claims of Alicia and Gina, and Alicia and Gina's motions to suppress, to dismiss, and to enforce settlement.

### I. Factual Summary

The relevant facts of the case are briefly recited as follows. Based on prior drug buys which were traced to the defendant real estate, a search warrant was executed on the property on September 20, 1990 by the Grandview Missouri Police Department and the Jackson County Drug Enforcement Task Force. During the execution of the search warrant, Johnson was found in the bathroom of the house attempting to flush illegal drugs down the toilet. Found in and around the toilet in the bathroom were methamphetamine and cocaine base, both schedule II controlled substances, and Flunitrazepam, a schedule IV controlled substance. Marijuana was also found at two other places in the residence.

Also discovered at the residence were the following: a concealed room in the basement that contained a surveillance monitor and VCR linked to a video camera mounted outside the house; a second monitor and VCR in the kitchen that were also linked to the outside camera; a programmable police scanner in the kitchen, which was in operation at the time of the search and was programmed with the frequencies of local law enforcement agencies; two fully-loaded firearms, a Smith and Wesson .357 magnum revolver found on a bedside table in the master bedroom, and a .38 caliber Derringer found on the kitchen table; several hundred dollars of Jackson County Drug Task Force buy money that were commingled with the defendant currency; two upright safes and a floor safe in the concealed room in the basement; pieces of jewelry and electronic items that have been identified as stolen property.

In addition, a fifteen year old female runaway was found in the concealed room in the basement. The girl told police that she had been living at the house with Johnson for approximately six months. At the time of the search she was approximately four months pregnant.

An arrest warrant was issued for Johnson on September 25, 1990, for drug trafficking in the second degree, a Class A felony. *See* Attachment Four to Plaintiff's Reply Suggestions in Support of the Motion to Dismiss the Claim of Johnson. The warrant remains outstanding as of this date. Plaintiff claims that Johnson is a fugitive from the warrant. Johnson claims through his attorney that plaintiff has not attempted to serve the warrant on him or to locate him, and thus he is not a fugitive.

Title to the defendant real estate was originally in the name of Frances M. Tawney. In accordance with the duly probated will of Tawney, title to the property was

484

transferred to the children of the decedent on April 11, 1990, namely Virginia Skinner, Mary Ash, and claimant Johnson. On or about June 10, 1990, Ash and Skinner transferred their respective interests in the property to Johnson by quitclaim deed.

On September 21, 1990, the day after the property was searched, a warranty deed dated September 8, 1990 was filed with the Jackson County recorder's office, transferring the defendant real estate from Johnson to Alicia and Gina. The deed was notarized by Ms. Debra Cullinan.

Cullinan has since told Detective Woody Pool that Alicia presented the deed to her with a signature purporting to be that of Johnson already on the deed, and asked Cullinan incorrectly to back-date the deed to September 8th, which Cullinan did. While Cullinan is unsure about the exact date on which this happened, she is certain that it was a date after September 8th and was a few days before Alicia returned to Cullinan's office on September 24, 1990.

When Alicia left Cullinan's office with the notarized deed after her first visit there, she told Cullinan that she would take the deed directly to the courthouse for filing. The deed was filed at the courthouse at 12:28 p.m. on September 21, 1991, the day after the property was first raided. According to Cullinan, Alicia returned to Cullinan's office on September 24, 1990, to inform Cullinan that she would probably be questioned about the deed, and Alicia later told Cullinan that her story had to match Alicia's.

In its motions to dismiss the claims of Johnson, Alicia and Gina, plaintiff challenges the claimants' standing to make claims on the property or to raise objections to this forfeiture action. For the reasons that follow, the court agrees that the claimants lack standing and thus their claims will be dismissed.

*II. John Edward Johnson's Claims on the Defendant Properties*

■ Courts have long held that a party's status as a fugitive from justice "disentitles the defendant to call upon the resources of the Court for determination of his claims." *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970). This doctrine applies equally as well in civil forfeiture cases as it does in criminal cases. *See United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami, Dade County, Florida,* 868 F.2d 1214, 1216 (11th Cir.1989) ("By his own actions as a fugitive the appellant has disentitled himself from raising objections such as this to the forfeiture."); *United States v. $129,374 in U.S. Currency,* 769 F.2d 583, 587 (9th Cir.1985), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986); *United States v. $45,940 in U.S. Currency,* 739 F.2d 792, 798 (2d Cir.1984) (claimant "waived his right to due process in the civil forfeiture proceeding by remaining a fugitive"); *United States v. $182,980 in U.S. Currency,* 727 F.Supp. 1387, 1388 (D.Colo.1990) ("[B]ecause he is a fugitive from justice, claimant lacks standing to contest the forfeiture.").

■ Johnson contends that he is not a fugitive. He argues, without any caselaw or statutory support, that to become a fugitive "there must be some positive act on the part of the alleged wrongdoer to place himself beyond the jurisdiction of the court." Suggestions in Opposition to Motion to Dismiss Claim of Johnson, p. 8. Johnson argues that he has committed no such act, either by escaping, violating bond, or failing to appear for a hearing. Rather, he contends that plaintiff has simply failed to serve the warrant on him and has not even attempted to locate him.

The status of being a fugitive from the law, however, is not as formalistic as Johnson argues, and this court will read no "positive act" requirement into the definition. The Second Circuit stated in *United States v. Catino,* 735 F.2d 718 (2d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984), that

[I]ntent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending. *Matter of Assarsson,* 687 F.2d 1157, 1161–62 (8th Cir.1982); *United States v. Ballesteros–Cordova,* 586 F.2d

1321, 1324 (9th Cir.1978). This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of charges while legally outside the jurisdiction, "constructively flees" by deciding not to return. *Jhirad v. Ferrandina,* 536 F.2d 478, 483–84 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). *Catino,* 735 F.2d at 722–23 (affirming dismissal of fugitive's claims in civil forfeiture action). *See also United States v. $45,940 in U.S. Currency,* 739 F.2d at 796.

Johnson is the subject of a warrant for arrest issued September 25, 1990 in the Circuit Court of Jackson County, Missouri. The warrant charges Johnson with second degree drug trafficking and it remains outstanding as of this date. Johnson has neither returned to his residence in Valley View Estates nor otherwise made his whereabouts known to the law enforcement community.

Per the affidavit of Mark Warren, detective with the Jackson County Drug Task Force, the warrant for Johnson's arrest has been entered in the computers of local, state and federal law enforcement authorities. It is thus anticipated that the warrant will be executed and Johnson arrested when he comes into contact with whatever law enforcement authority.

It is interesting to note that Johnson does not argue that he is not hiding from the authorities. Nor does he argue that he is not a fugitive because he is ready and willing to submit to the jurisdiction of the authorities, as might be expected if he were in fact not hiding. Rather, he basically argues that he is not a fugitive because he has not yet been caught by the authorities and thus has not been proven to be hiding. The court believes that this turns the definition of fugitive on its head.

As the Ninth Circuit stated in *United States v. $129,374 in U.S. Currency,* 769 F.2d at 587, "[i]t is important to recognize that Lewis has complete control over the protection of his property interests in this forfeiture proceeding; if he finds his interests are sufficiently worth defending, he can terminate his fugitive status and

present his own defense." Johnson had the same choice available to him—submit to the jurisdiction of the authorities, which would thus entitle him to raise any claims or objections to the current forfeiture action, or continue as a fugitive from the law and thus be barred from calling upon the court's resources for a determination of his claims. Since Johnson chose the latter option, his claims will be dismissed for lack of standing.

### III. Claims of Alicia Johnson and Gina Zarrin'Kia in the Defendant Properties

 The claims of Alicia and Gina in the defendant currency must likewise be dismissed. Alicia and Gina claim equitable interests in the currency as the "agents-in-fact" for Johnson. *See* Claims of Alicia Johnson and Gina Zarrin'Kia, both filed June 7, 1991. Since the court has determined that Johnson has no standing to raise a claim on the defendant currency in his own right, Alicia and Gina likewise have no standing to raise claims as his agents.

 Alicia and Gina also have asserted claims on the defendant real estate. To have standing to raise a claim on forfeiture property, a claimant must prove an ownership interest in the res. *United States v. One 1945 Douglas C–54 (DC–4) Aircraft, Serial No. 22186* (Douglas II), 647 F.2d 864, 866 (8th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982). Ownership may be "evidenced in a number of ways including showings of actual possession, control, title and financial stake." *Id.* The Eighth Circuit also has recognized, however, that "possession of bare legal title to the res may be insufficient to establish ownership." *United States v. One 1945 Douglas C–54 (DC–4) Aircraft, Serial No. 22186* (Douglas I), 604 F.2d 27, 28 (8th Cir.1979).

Alicia and Gina claim an ownership interest by their professed dominion and control over the property. In support of this they claim that shortly before the property was searched they had begun to store their belongings in the garage of the residence, and that at some point after the search

they had possession of the keys and garage door opener to the house.[1]

The court rejects the notion that claimants' offered proof substantiates any dominion or control over the defendant property. At best, claimants' storage of belongings in the garage evidences some dominion over the garage[2] but not over the residence. Furthermore, it is entirely unclear from the pleadings of Alicia and Gina as to when they came into possession of the keys and the garage door opener, or for that matter how many sets of keys and garage door openers there were.

What is clear in contrast is that Johnson had complete dominion and control over the property. He was in possession of the property; he resided on the property; he used the property in his drug trade; and he kept an underage, female, run-a-way companion secreted on the property. In light of this uncontradicted evidence, the court is puzzled as to the extent to which Alicia and Gina now seek to claim that they controlled the residence at the time of the search, and by implication the activity that was ongoing in the residence.

Alicia and Gina also claim an ownership interest in the property through the warranty deed filed on September 21, 1990. Given Ms. Cullinan's affidavit testimony that Alicia asked her to back-date the notarization of the deed, and Cullinan's seeming lack of any reason to implicate herself in a falsified story of knowingly and fraudulently misdating title documents, the court finds that claimants' claim of title as of September 8, 1990 is suspect at best.[3] Even assuming arguendo, however, that lawful title did pass to Alicia and Gina on September 8, 1990, the court finds that this fact in itself is insufficient to establish an ownership interest under the facts of this case. *See Douglas I,* 604 F.2d at 28.

Accordingly, Alicia and Gina lack standing to assert any interest in the defendant properties, and their claims will be dismissed. Furthermore, since standing is a threshold issue that claimants' have failed to establish, *see Alexander v. City of Minneapolis,* 928 F.2d 278, 282 (8th Cir.1991), the court need not address Alicia and Gina's motions to suppress, to dismiss, or to enforce settlement. Therefore, it is

ORDERED that plaintiff's motion to dismiss the claim of John Edward Johnson is granted. It is further

ORDERED that plaintiff's motion to dismiss the claims of Alicia Johnson and Gina Zarrin'Kia is granted. It is further

ORDERED that Alicia Johnson and Gina Zarrin'Kia's motion to suppress, two motions to dismiss, and motion to enforce settlement are each denied for lack of standing.

---

**1.** Alicia and Gina also assert that their control over the property is evidenced by their alleged purchase of a homeowner's policy on the residence. The court is unpersuaded by this argument as it is entirely unsupported, either by a copy of the alleged policy, or by providing basic information on the policy such as the date of coverage and the insurer.

**2.** If the belongings were stored in the garage with the knowledge or consent of Johnson, the fact of their storage might not prove control by claimants even over the garage.

**3.** If Cullinan's allegations indeed prove to be true, they raise serious concern over an obstruction of justice charge being brought against Alicia.