**UNITED STATES of America,**

v.

. **Adnan KHASHOGGI, Defendant.**

**No. SSSS 87 Cr. 598 (JFK).**

United States District Court,
S.D. New York.

July 25, 1989.

Benito Romano, U.S. Atty. S.D.N.Y., New York City (Charles G. LaBella, Debra A. Livingston, Asst. U.S. Attys.), for U.S.

Obermaier, Morvillo & Abramowitz, New York City (Robert G. Morvillo, Sarah N. Chapman, of counsel), for defendant.

## OPINION and ORDER

KEENAN, District Judge.

This case is before the Court upon the motion of the Government to detain the defendant pending trial on the ground that he poses a serious risk of flight. The defendant submits that he has no intention to evade this Court's jurisdiction and proposes several alternatives to pretrial detention. A hearing was had concerning this matter pursuant to 18 U.S.C. § 3142(f)(2)(A), (B) on July 18, 1989. For the reasons detailed below, the defendant is ordered released pending trial in accordance with the conditions set forth in the conclusion of this decision.

## BACKGROUND

The defendant is an enormously wealthy and well-known Saudi Arabian businessman. The third superseding indictment in this action, filed in October, 1988, charged the defendant and nine co-defendants with violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), conspiracy to violate RICO, obstruction of justice, and mail fraud. The six counts against the defendant essentially charge that he assisted former Philippine President Ferdinand Marcos * and co-defendant

---

* Ferdinand Marcos has been severed from the    indictment because of poor health.

Mrs. Imelda Marcos in concealing the true ownership of property and other assets in connection with a civil lawsuit before Judge Pierre Leval of this Court.

When the third superseding indictment was filed, the defendant was outside of the jurisdiction of this Court. Rather than voluntarily submit to the jurisdiction of this Court, the defendant remained abroad as a fugitive for six months until he was arrested in Bern, Switzerland on April 18, 1989. The United States immediately commenced extradition proceedings against the defendant and on July 14, 1989 the Swiss Government announced that the defendant would be extradited to the United States only on Counts 3 and 4 of the indictment—the mail fraud and accompanying obstruction of justice charges. As a result, the defendant faces only Counts 3 and 4 in this Court. *See United States v. Rauscher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886).

The defendant declined to exercise his right to appeal the extradition in Switzerland and elected to travel to the United States for an immediate arraignment on Counts 3 and 4. On July 18, 1989 the defendant pleaded not guilty to those counts and this Court ordered him remanded until Pretrial Services could gather sufficient information about his background and financial condition to make an informed recommendation of bail.

The Government has moved pursuant to 18 U.S.C. § 3142 for the defendant's pretrial detention on the ground that the defendant's vast resources render it impossible for this Court to fashion conditions of pretrial release which would insure the defendant's presence at trial. The Court recognizes that no precautions, including pretrial detention, ever conclusively guarantee a defendant's presence at trial. Nevertheless, the Court believes that a substantial bail coupled with significant restrictions on the defendant's freedom will reasonably assure this defendant's presence at trial.

## DISCUSSION

■ The Second Circuit has adopted a two-step inquiry for deciding a Government pretrial detention application. First, the court must determine whether the Government has established "by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice." *United States v. Friedman,* 837 F.2d 48, 49 (2d Cir.1988). If the Government satisfies this burden, the court must assess "whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released." *United States v. Shakur,* 817 F.2d 189, 195 (2d Cir.), *cert. denied,* 484 U.S. 840, 108 S.Ct. 128, 98 L.Ed.2d 85 (1987).

■ Congress has set forth the factors a court must consider in weighing the appropriateness of pretrial detention. *See* 18 U.S.C. § 3142(g). The court is instructed to consider "the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community." *United States v. Chimurenga,* 760 F.2d 400, 403 (2d Cir. 1985). The court should also "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *Shakur,* 817 F.2d at 195 (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 7, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3189). With these principles in mind, the Court turns to the Government's application.

## I. *Nature and Circumstances of the Offense*

As noted earlier, the defendant is charged with mail fraud and obstruction of justice. The Government intends to prove that defendant and several of his co-defendants violated the terms of an injunction issued by Judge Leval in a civil proceeding in which the Philippine government seeks restitution of money allegedly stolen by the Marcoses. Specifically, the Government contends that Ferdinand Marcos transferred to defendant bearer stock certificates in several Panamanian corporations, which indirectly owned several New York proper-

ties, to conceal Marcos' ownership of the properties. The Government also alleges that the defendant made false statements to a French magistrate in Cannes, France concerning art work purchased by him from the Marcoses.

Each count is punishable by five years imprisonment and a $250,000 fine.

## II. *Weight of the Evidence*

■ It is difficult for the Court at this time to assess the strength of the Government's case. The Government's theory of liability is novel and the evidence, which is not before the Court, promises to be largely documentary. The defendant has preliminarily raised several arguably plausible defenses in opposition to the Government's untried theory of liability. Thus, the Court is unable presently to make an intelligent evaluation of the weight of the evidence.

## III. *History and Characteristics of Defendant*

The defendant is a 54 year old, internationally-known Saudi Arabian businessman. He has no prior arrest record.

### A) Physical and Mental Condition

The defendant has no serious health problems. He claims to use the services of a chiropractor occasionally, but the defendant manifests no outward indications of any kind of physical difficulties. The defendant has no history of mental problems.

### B) Family Ties

The defendant's wife currently resides in Cannes, France. The defendant has six children, five of whom are by his previous marriage. Two of these children, both adults, apparently reside in the United States. One of these children, however, is presently travelling abroad.

The defendant has two brothers and two sisters. One of the brothers maintains an apartment at the Olympic Towers in New York, where the defendant also owns an apartment. One of the defendant's sisters resides in Maryland, while the remaining siblings live abroad.

### C) Employment

The defendant has provided the Court with a list of companies he owns, as well as lists of his investments and assets. It appears from these tallies that the defendant receives all of his income from investment activity.

### D) Financial Resources

The Government and the defendant concur that the defendant is "an enormously wealthy man." Indeed, the breadth of his wealth and its sources necessitated the defendant's incarceration until Pretrial Services could gather adequate information about the defendant's resources to render a meaningful recommendation on the appropriateness of bail. It is sufficient to observe for purposes of this application that the defendant possesses the means to procure staggering amounts of cash in fewer than 24 hours.

### E) Length of Residence in Community

Prior to his appearance at his arraignment, the defendant had not visited the United States since 1986.

### F) Community Ties

The defendant's ties to this community appear to be primarily financial. As noted earlier, the defendant owns an apartment at Olympic Towers in New York. The Government points out, however, that a foreclosure proceeding is pending against this property and argues that this Court should disregard the defendant's proposal that he be released and permitted to live at that apartment pending trial. Defense counsel in response represents that the foreclosing bank has agreed to afford the defendant one year to clear the default. Moreover, defense counsel affirmed on July 24 that the defendant's brother has offered to make his Olympic Towers apartment available to the defendant if necessary.

### G) Past Conduct and Record of Past Appearances

The parties vigorously dispute in whose favor this factor should tip. The Government contends that the defendant's continued absence from this jurisdiction after the filing of criminal charges against him and his resistance against extradition evidence an unwillingness now to remain in the jurisdiction to stand trial. Of course, "[t]he

intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending." *United States v. Catino,* 735 F.2d 718, 722 (2d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984). The defendant in *Catino* resisted extradition from France throughout the course of a lengthy extradition process. The defendant here, however, waived his right to appeal extradition in Switzerland and travelled immediately to the United States for arraignment. As the defendant urges, this course of conduct evinces a willingness, albeit overdue, to submit to the jurisdiction of this Court.

### IV. *Nature and Seriousness of the Danger to the Community*

The Government has not suggested that pretrial release of the defendant would present a danger to the community. The Court notes that although risk of flight alone is sufficient grounds to enter an order of detention, the defendant here is not charged with a crime of violence or a narcotics violation. This militates in favor of pretrial release.

The Court also observes with respect to this factor that the Government purports to base its application in part on 18 U.S.C. § 3142(f)(2)(B). That section provides for a pretrial detention hearing where "a serious risk [exists] that the person will obstruct or attempt to obstruct justice...." The Government has made no proffer in support of this ground for detention and the Court is unable to glean any such support from the Government's submissions. Accordingly, the Court sees no justification for pretrial detention on obstruction grounds.

Although the defendant does not raise the issue, the Court notes another factor which, although not identified by Congress, should be considered. Undoubtedly, "at some point and under some circumstances, the duration of pretrial detention becomes unconstitutional." *United States v. Gonzales Claudio,* 806 F.2d 334, 339 (2d Cir. 1986). At some point, traditional notions of due process cannot countenance protracted pretrial detention of an individual presumed innocent. *See United States v. Melendez–Carrion,* 820 F.2d 56, 59 (2d Cir. 1987). Although the flexible standards of due process preclude fixing an unconstitutional period of pretrial detention with certainty, the Second Circuit has observed that "grave due process concerns" are implicated by a seven month period of pretrial detention. *United States v. Jackson,* 823 F.2d 4, 7 (2d Cir.1987).

The Government has indicated that the earliest date on which the trial of this case could commence is January, 1990, six months from now. Although the Court does not question the Government's candor, it cannot refrain from observing that the case's progress has been beset with delays and diversion of Homeric proportion. The Court must conclude that the likelihood of a somewhat prolonged pretrial detention for the defendant weighs in his favor on this application.

### CONCLUSION AS TO RISK OF FLIGHT

In view of the circumstances of this case, on balance the Court concludes that the defendant does not pose a substantial risk of flight. The Court is acutely aware that the defendant is a man of extraordinary means, means which could facilitate a hasty departure from the jurisdiction. The Court, however, believes that the defendant understands that flight would be an ill-considered course for him to take. Several factors support this conclusion.

First, the defendant's business affairs depend upon his ability to deal with high government and private business officials. His flight from the United States would have a ruinous impact upon his ability to conduct business in the manner with which he is accustomed. The obloquy associated with fugitive status would seriously hamper the defendant's continued credibility as a businessman.

Second, if he were to flee, the defendant would be subject to prosecution upon recapture for the easily provable crime of bail jumping. Bail jumping carries a penalty of up to five years imprisonment and a $10,000 fine. 18 U.S.C. § 3146(b)(1)(A)(ii).

Third, the defendant having been arraigned, he could be tried *in absentia* if he were to flee. Few would dispute that a defendant who is present at trial stands a greater chance of acquittal than a defendant conspicuously absent to his trier of fact.

Fourth, as noted above, the Court believes that the defendant's decision to waive his appellate rights in Switzerland and travel to New York for arraignment manifests an intention to remain here and face the charges against him.

Fifth, the defendant is aware that the Royal Consulate General of Saudi Arabia has guaranteed this Court that the defendant's homeland will insure the defendant's appearance at trial. Although the United States has no extradition treaty with Saudi Arabia and this Court is without authority to enforce this guarantee, the defendant must be aware that his country's government is committed to assisting the administration of justice in the United States.

In light of these considerations, as well as the statutory factors and constitutional concerns discussed above, the Court believes that it would be an abuse of discretion to order detention of this defendant pending trial.

## CONCLUSION

As the defendant recognizes, this Court deems it appropriate that his release be conditioned upon several conditions which are calculated to "reasonably assure" his appearance at trial. 18 U.S.C. § 3142(c). First, the defendant's pretrial release must be "subject to the condition that the person not commit" a crime during the period of release. 18 U.S.C. § 3142(c)(1)(A); *see also* § 3142(h)(2). Pursuant to 18 U.S.C. § 3142(c)(1)(B), the Court imposes the following further conditions upon the defendant's pretrial release:

1. The defendant shall be subject to release upon the posting of a personal recognizance bond in the amount of $10 million. $5 million of this amount shall be secured by cash or assigned bank books. The personal recognizance bond is to have two financially secure co-signers, one of whom is to be the defendant's brother, Essam Khashoggi. The remaining $5 million shall be secured by real property subject to the jurisdiction of this Court or a surety bond in that amount, or a combination of the two.

2. The defendant shall be subject to electronic monitoring by Pretrial Services through the use of an unremovable, electronic "bracelet" attached to the defendant's wrist or ankle. This device shall be affixed to the defendant's wrist or ankle prior to his release from the Metropolitan Correctional Center.

3. The defendant shall personally report to Pretrial Services at 26 Federal Plaza, Room 709, before 12 noon on Monday and Thursday of each week while he is released.

4. The defendant shall personally establish telephonic communication with Pretrial Services on a daily basis, including weekends and holidays.

5. The defendant shall relinquish his passport and any other travel documents to the Clerk of this Court and shall not apply for any other travel documents during the pendency of this case.

6. Defendant is not to leave the Southern District of New York without specific permission of this Court.

Pursuant to 18 U.S.C. § 3142(h)(2), the Court further advises the defendant that violation of one or more of the above conditions of release will result in the immediate issuance of a warrant for his arrest.

The defendant is also instructed to appear at the status conference scheduled in this matter on July 27, 1989 in Courtroom 444 at 10:00 A.M.

SO ORDERED.