UNITED STATES of America, Plaintiff,

v.

CERTAIN REAL PROPERTY AND PREMISES KNOWN AS 218 PANTHER STREET, NEWFOUNDLAND, PENNSYLVANIA, 69 Gauldy Avenue, Staten Island, New York; and 21 Norman Place, Staten Island; Certain Honda All–Terrain Vehicles and Yamaha Snowmobiles; and a Certain Yong Chang G185 Piano, Serial Number 0042401, Defendants.

No. CV 89–4169(RR).

United States District Court, E.D. New York.

Aug. 21, 1990.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Arthur Hui, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Albert J. Kreiger, P.A. by Kenneth J. Kukec, Albert J. Kreiger, Miami, Fla., for claimant John Eng.

MEMORANDUM AND ORDER

RAGGI, District Judge:

The United States of America moves for default judgment against certain real and personal property which it seeks to forfeit as the proceeds of narcotics trafficking. 21 U.S.C. § 881 (1988). Johnny Eng, indicted in this district in August 1989 for his alleged management of a continuing criminal heroin enterprise, *United States v. Eng*, 89 CR 255 (August 24, 1989), and presently fighting extradition from Hong Kong to the United States in connection with these charges, opposes the entry of a default. Specifically, he moves for release of all subject property from the government's control, dismissal of those claims brought against property located outside

this district and for an indefinite stay of these proceedings pending the conclusion of his United States criminal case.

For the reasons stated herein, this court finds that Eng lacks standing to challenge forfeiture of property to which he has never filed a formal claim. Moreover, because Eng is a fugitive from justice on a criminal case pending in this district, he is not entitled to be heard in this related civil matter. His motions are denied and judgment by default entered in favor of the United States.

### Factual Background

On December 12, 1989, the United States commenced this *in rem* forfeiture action against three residences and various items of personal property, all of which are alleged to have been purchased either directly or indirectly by Johnny Eng with the proceeds of his narcotics trafficking. Potential claimants were notified, including Eng, who was then in the custody of Hong Kong authorities, having been arrested on August 17, 1989 pursuant to a request made by the United States under Article VIII of the Extradition Treaty between this country and the United Kingdom. On December 21, 1989, Eng was ordered extradited by the Magistrates Court of Hong Kong. He is presently challenging this decision to the Hong Kong High Court, which heard his petition for habeas corpus in May 1990.

Also notified of this forfeiture action were Lori Eng, Johnny Eng's wife and the listed co-owner with him of the 69 Gauldy Avenue property; Mai Yuk Law, Lori Eng's sister and with her the co-owner of the 21 Norman Place property; Chik Kun Wong, Johnny Eng's uncle and the owner of the 218 Panther Street property, and various financial institutions holding mortgage notes on the subject premises.

On March 15, 1990, verified notices of claim were filed as to certain of the subject property by Chik Kun Wong and by Lori Eng. Neither filed timely answers to the complaint nor responses to interrogatories as required by Rule C(6) of the Supplemental Rules of Civil Procedure for Certain Admiralty and Maritime Claims. *See Mercado v. U.S. Customs Service*, 873 F.2d 641, 645 (2d Cir.1989) (Rule C(6) sets forth procedures for making claim in *in rem* forfeiture proceeding).

That same day, Johnny Eng, without filing any notice of claim, filed a motion returnable May 25, 1990: (1) to order the government to show cause why the subject property should not be released from arrest given the alleged failure to give him proper notice[1]; or (2) to dismiss such claims as related to property outside the geographical limits of this district[2]; or (3) to stay forfeiture proceedings until the conclusion of his criminal case.

On May 13, 1990, the government moved for entry of default judgment against the subject property, noting specifically the failure of any claimant to file a timely answer. Lori Eng and Chik Kun Wong promptly cross-moved for leave to file untimely answers.

Oral argument on the various motions revealed that no party's claim alleged an interest in certain of the defendant properties, *i.e.*, the all-terrain vehicles, snowmobiles and the 21 Norman Place, Staten Island, residence. Accordingly, on May 29, 1990, the court entered judgment in favor of the United States as to these items. In that same order, the court denied default judgment as to those properties claimed by Ms. Eng and Mr. Wong, granting them leave to file answers on or before June 4, 1990, with the proviso that they simultaneously answer interrogatories, as provid-

---

1. This claim was eventually withdrawn, counsel conceding notice.

2. Although Eng's lack of standing makes it unnecessary to address the merits of this claim, the court does note that 21 U.S.C. § 881(j) expressly provides that "in the case of property of a defendant charged with a violation that is the basis for forfeiture of property under this sec-

tion, a proceeding for forfeiture under this section may be brought in ... the judicial district in which the criminal prosecution is brought. *See United States v. 5708 Beacon Drive, Austin, Texas*, 712 F.Supp. 525, 527 (S.D.Miss.1988); *United States v. Premises Known as Lots 50 & 51*, 681 F.Supp. 309, 312–13 (E.D.N.C.1988).

ed for in Rule C(6). The court also reserved on the motion of Johnny Eng to permit him to file papers in support of his claim of entitlement to be heard.

In fact, neither Ms. Eng nor Mr. Wong filed answers or responses to interrogatories by June 4, 1990. Accordingly, on June 6, 1990, the court entered judgment in favor of the United States against the property known as 218 Panther Street, Newfoundland, Pennsylvania, and against the defendant piano. It further entered judgment in favor of the United States as against any interest that Ms. Eng might have in the 69 Gauldy Avenue, Staten Island, property.

### Discussion

The sole issue before this court is whether an individual, such as Johnny Eng, who has filed no formal notice of claim and who is actively engaged in opposing his extradition to the United States to stand trial on related criminal charges, is, nevertheless, entitled to be heard in opposition to the government's attempt to forfeit civilly property that is alleged to be the proceeds of his illegal conduct. This court finds that he is not.

■ Before an individual can be heard to contest a forfeiture claim, he must demonstrate standing. *Mercado v. United States Customs Service*, 873 F.2d at 644. Standing is established through the procedures set forth in Rule C(6), requiring a party to file a claim within ten days after process has been executed or within such additional time as may be allowed by the court, and to file an answer within twenty days after the filing of the claim. *See id.* at 644–45; *United States v. United States Currency in the Amount of $2,857,000*, 754 F.2d 208, 213 (7th Cir.1985).

■ In this case, Johnny Eng has never filed a claim or answer. Although his attorney originally argued that the govern-

ment had failed to comply with notice requirements—a necessary precondition to any action on Eng's part—he subsequently conceded notice. At no time, thereafter, however, has a claim or answer been filed on Eng's behalf. The court simply cannot entertain opposition to forfeiture from a party who has not taken the steps necessary to establish his standing to be heard in the case.

■ If, by denominating himself a "potential claimant," and by moving for a stay of these proceedings, Eng is, in fact, asking this court to defer his obligations to file a claim and answer until his criminal case is resolved, this court declines to do so.[3] Eng is a fugitive from justice, and this court will not stay a civil case pending the outcome of a criminal matter in which he hopes never to appear.

In *Molinaro v. New Jersey*, 396 U.S. 365, 366, 90 S.Ct. 498, 498–99, 24 L.Ed.2d 586 (1970) (per curiam), the Supreme Court held that a convicted defendant, who failed to surrender himself to authorities to serve his sentence, was indeed a fugitive "disentitled" from calling upon the resources of a court for determination of his appellate claims. Although the Supreme Court has not yet extended *Molinaro* to civil matters, the Courts of Appeals have done so in a number of cases, particularly where, as here, the issues in the criminal case in which defendant is a fugitive relate to the civil case in which he seeks to be heard. *See Conforte v. Commissioner*, 459 U.S. 1309, 103 S.Ct. 663, 74 L.Ed.2d 588 (1983) (Rehnquist, J., Circuit Justice) (and cases cited therein), *quoted in United States v. $45,940*, 739 F.2d 792, 797 (2d Cir.1984).

Nevertheless, Eng argues against the application of the disentitlement doctrine to this case on the grounds that: (1) he is not a fugitive, since he is not free to return to the United States, but incarcerated in a foreign country; (2) he should not be penal-

---

**3.** 21 U.S.C. § 881(i) permits a court to stay a civil forfeiture proceeding "upon motion of the United States" if it relates to an indicted criminal case. No mention is made, however, of stays being granted at the request of a claimant, much less a potential claimant. Rule C(6), how-

ever, does permit a court to grant a person additional time beyond ten days in which to file a claim. *See United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1435–36 (9th Cir. 1985).

ized for exercising his right to challenge extradition; and (3) the doctrine should not be applied to civil *in rem* proceedings. This court disagrees.

As the Second Circuit has made clear, a fugitive from justice is not simply one who flees the jurisdiction wherein he is being prosecuted. An individual who learns of charges against him while legally outside the jurisdiction "constructively flees" by deciding not to return. *See Jhirad v. Ferrandina,* 536 F.2d 478, 483–84 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976) (*Jhirad II*). Thus, in *United States v. $45,940, supra,* the court held that a deported alien who failed to apply for permission to reenter the United States upon learning that charges were pending against him in this country waived his due process rights to defend a related civil forfeiture proceeding. 739 F.2d at 798.

The decision in *$45,940* relied on a circuit case decided six weeks earlier, *United States v. Catino,* 735 F.2d 718 (2d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984), which expressly held that an individual incarcerated in a foreign country who actively resists extradition "instead of consenting to return to the United States" is constructively a fugitive. 735 F.2d at 722. Although *Catino* presented the court with a statute of limitations, not a disentitlement, question, that distinction had no bearing on the court's ruling. The holdings in *Catino* and *$45,940* lead this court to conclude that Johnny Eng's continued incarceration in Hong Kong is due solely to his resistance to United States efforts to extradite him to this country.[4] He is, therefore, properly deemed a fugitive from justice. *See Schuster v. United States,* 765 F.2d 1047, 1050 (11th Cir.1985) (citing *Catino,* court upholds applicability of disentitlement doctrine to individual who "established her status as a fugitive from

this nation's criminal process, particularly as of the moment she chose to resist extradition"); *c.f., United States v. Khashoggi,* 717 F.Supp. 1048, 1051 (S.D.N.Y.1989) (defendant's waiver of right to appeal his extradition from Switzerland and his immediate travel to New York for arraignment evidenced a willingness to submit to the jurisdiction of the federal court).

Johnny Eng contends that he should not be treated as a fugitive merely because he is exercising his "right" to challenge extradition. Whatever rights Eng may enjoy under Hong Kong law, or derivatively under the extradition treaty in effect between the United States and the United Kingdom, *see Matta–Ballesteros v. Henman,* 896 F.2d 255, 259 (7th Cir.1990), *citing United States ex rel. Lujan v. Gengler,* 510 F.2d 62, 67 (2d Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975), he does not claim—nor could he—that they are constitutionally protected. Thus, the mere fact that their exercise results in the loss of some other benefit or opportunity is not proscribed. Indeed, in *United States v. Catino,* 735 F.2d at 723, the Second Circuit observed that defendant "faced a choice whether to exercise his right to oppose extradition or gain the benefit of the statute of limitations by fulfilling his duty to do all in his power to return to the United States." Defendant was entitled to choose the former course, but could not complain if he thereby lost the latter. This logic is equally applicable to this case. Mr. Eng remains free to challenge or consent to his extradition as he wishes. But he cannot be heard to complain if a court draws from the former conduct the logical conclusion that he is intent on avoiding prosecution in this country.

Indeed, if Eng's challenge to extradition is successful in the courts of Hong Kong, it is doubtful whether he would ever volun-

---

**4.** Although Eng suggests that his Hong Kong incarceration relates to a local investigation as well as the United States' extradition request, that contention is belied by the submission of Michael C. Blanchflower, Senior Crown Counsel with the Legal Department of Hong Kong. Therein, Mr. Blanchflower notes that, although Eng was originally arrested on August 15, 1989 on local charges, these were dropped on August 17, 1989. No local criminal charges are presently pending. Indeed, Mr. Blanchflower states that if Eng's challenge to his extradition fails in the Hong Kong courts, he will be surrendered to the United States upon the Governor of Hong Kong signing a warrant of surrender.

tarily travel to the United States to face the criminal charges against him. He has pointedly ignored this court's invitation to submit an affidavit stating that he wishes to return to the United States. One of the very principles underlying the disentitlement doctrine is the inequity of allowing fugitives to pursue in United States' courts those cases where they foresee the possible receipt of a benefit, while seeking to avoid those actions that could impose burdens. *See Clark v. Dalsheim,* 663 F.Supp. 1095, 1096 (S.D.N.Y.1987). Mr. Eng simply attempts to play a variation on this theme by arguing that he should be allowed to preserve his right to be heard in this civil action *in the event* he is unsuccessful in preventing his extradition from Hong Kong on his criminal case. The court is unpersuaded.

Finally, although Eng urges this court to find the disentitlement doctrine not applicable to an *in rem* forfeiture proceeding, relying on *United States v. $83,320,* 682 F.2d 573 (6th Cir.1982), the Second Circuit decision in *United States v. $45,940, supra,* is plainly to the contrary. 739 F.2d at 797 (considering and rejecting the rationale underlying *$83,320*). A number of other courts are in agreement. *E.g., United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane,* 868 F.2d 1214, 1216–17 (11th Cir.1989); *United States v. $129,374,* 769 F.2d 583, 587–88 (9th Cir.1985), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986); *United States v. $182,980,* 727 F.Supp. 1387, 1388 (D.Colo. 1980). The primary concern of the Sixth Circuit in *$83,320* was that too broad an application of the disentitlement doctrine to *in rem* proceedings might jeopardize the rights of others, besides the fugitive, who seek to file claims. As the history of this case demonstrates, this court was prepared to entertain claims by third parties who complied with the requirements of Rule C(6). *See United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane,* 868 F.2d at 1217; *United States v. $45,940,* 739 F.2d at 797.

### Conclusion

Johnny Eng, not having filed a timely claim and answer in this case, has failed to demonstrate standing to be heard in opposition to this forfeiture proceeding. Moreover, his active opposition to the United States' request that he be extradited from Hong Kong to New York disentitles him from being heard in these proceedings, even to request that they be stayed. His motions are, accordingly, dismissed.

There being no claimant presently before the court who has opposed the government's *in rem* forfeiture proceeding against defendant property, this court hereby directs the Clerk of the Court to enter default judgment in favor of the United States as to all such property.

SO ORDERED.