951 F.2d 461
 UNITED STATES of America, Plaintiff-Appellee,
v.
Johnny ENG, Claimant-Appellant,
Certain Real Property and Premises, Known as 218 Panther
Street Newfoundland, Pennsylvania, 69 Gauldy Avenue, Staten
Island, New York, and 21 Norman Drive, Staten Island, New
York, Certain Honda All-Terrain Vehicles, Yamaha
Snowmobiles, a Certain Yong Chang, G185 Piano, Serial Number
004201, Defendants.
 No. 1432, Docket 91-6013.
 United States Court of Appeals,
Second Circuit.
 Argued May 13, 1991.
Decided May 17, 1991.
Opinion: Dec. 3, 1991.
 
 Kenneth Joseph Kukec, Miami, Fla. (Albert J. Krieger, Susan W. Van Dusen, Albert J. Krieger, P.A., of counsel), for claimant-appellant.
 Arthur P. Hui, Asst. U.S. Atty. E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., of counsel), for plaintiff-appellee.
 Before CARDAMONE, WALKER and FRIEDMAN,* Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal arises as a result of the efforts of a defendant, detained in a foreign jurisdiction, to avoid criminal prosecution in the United States, while attempting at the same time to assert his claim to real property in this country, allegedly purchased with the proceeds of his criminal activities. It has been a truism for nearly half a millennium that "one cannot eat his cake and have it too." Defendant of course may elect to oppose extradition, but that choice has negative consequences that he may not evade. For the reasons discussed below, we affirm the August 21, 1990 decision of the United States District Court for the Eastern District of New York (Raggi, J.) 745 F.Supp. 118, holding that appellant Johnny Eng is disentitled from contesting a civil forfeiture proceeding instituted by the government against real property Eng claims ownership of so long as he continues to fight extradition that would return him to the United States to face criminal charges pending against him.
 
 BACKGROUND
 
 2
 In August, 1989 a grand jury in the Eastern District of New York returned an indictment against Eng on charges that he operated a continuing criminal enterprise in violation of 21 U.S.C. § 848(b), and on 17 additional charges under the narcotics laws, all involving the alleged sale of heroin. The continuing criminal enterprise offense carries a mandatory term of life imprisonment without parole. Eng had been detained in Hong Kong on suspicion of violating a local ordinance, and the authorities in that British Crown Colony on August 17, 1989 arranged for his release to Interpol agents pursuant to a detainer issued under Article VIII of the Extradition Treaty between the United States and the United Kingdom. The detainer was the result of a provisional arrest warrant requested by the United States under the Treaty. Since his arrest Eng has resisted extradition to the United States where the government seeks to prosecute him on the continuing criminal enterprise and narcotics charges.
 
 
 3
 In December, 1989, several months after Eng's arrest, the government filed under 21 U.S.C. § 881(a)(6) (1988) a civil in rem forfeiture action in the Eastern District of New York against certain real property located in New York and Pennsylvania. An amended verified complaint filed on February 15, 1990 charged that the properties were purchased with the proceeds of the narcotics offenses for which Eng had been indicted. Arrest warrants against the properties in rem issued, listing Eng, his wife, his sister-in-law, and his uncle as potential claimants. The arrest warrants, an amended verified complaint, and a set of interrogatories were served on the properties on March 1, 1990, and copies also were served on Eng's relatives between March 7 and March 10, 1990. In addition, the government by publication on March 12-14, 1990 in the New York Post gave notice of its pending civil action.
 
 
 4
 On March 15, 1990 Eng's wife and uncle filed verified notices of claims to certain of the properties. Also on March 15, Eng filed a motion for an order to show cause why the subject properties should not be released summarily from arrest or, in the alternative, for a dismissal of the government's claims to the properties outside New York, or for an indefinite stay of the civil proceedings pending the conclusion of any criminal proceedings against him. Eng's motion stated that he was a potential claimant to the properties but did not identify what, if any, interest he had. He asserted in addition that the government had failed to provide him with proper notice of the action.
 
 
 5
 The government served notice on Eng personally in his Hong Kong prison cell on March 23, 1990. On May 1, 1990 it moved for an entry of a decree of forfeiture against the properties based on the failure of any potential claimant to file a verified answer to the complaint within the applicable 20-day period. See Mercado v. United States Customs Service, 873 F.2d 641, 644-45 (2d Cir.1989) (describing the forfeiture process). On May 25, 1990 the district court heard oral argument on the government's motion for a default judgment, on Eng's motion, and on the motions of claimants Lori Eng and Chik Kun Wong, Eng's wife and uncle, respectively, for leave to file responses to the government's amended verified complaint and interrogatories. Several days later the motions of Eng's wife and uncle to file untimely verified answers was granted, and a default judgment on those properties for which no verified claim had been filed. At the hearing the court heard argument on whether Eng himself was entitled to contest the forfeiture procedures, given his continued resistance to extradition.
 
 
 6
 On August 21, 1990, after further proceedings, Judge Raggi granted a default judgment against Eng, denied his application for an order to show cause or to dismiss the action, and held that Eng lacked both statutory standing and was disentitled to be heard because of his resistance to extradition. The district court opinion is reported at 745 F.Supp. 118 (E.D.N.Y.1990). A default judgment in favor of the United States was entered on August 30, 1990. It is that judgment which Eng now appeals.
 
 DISCUSSION
 
 7
 On appeal Eng raises two issues. He contends that the district court erred in finding that (1) he was a fugitive and therefore not entitled to be heard in this civil forfeiture proceeding, and (2) he lacked statutory standing to challenge the forfeiture because he failed to file his claim timely under Admiralty Rule C(6). As a preliminary matter, he asserts that the district judge confused the concept of standing--without which he is barred from maintaining his civil action--with the concept of disentitlement, which is not jurisdictional. See Molinaro v. New Jersey, 396 U.S. 365, 366, 90 S.Ct. 498, 498-99, 24 L.Ed.2d 586 (1970). We do not view the district court's action as confusing these two concepts. Rather, it dealt with them disjunctively, stating that Eng's failure to file a claim and answer timely deprive him of standing to contest the forfeiture proceeding, and that his active opposition to extradition disentitles him, in any event, from being heard in the civil proceedings even to request a stay. See 745 F.Supp. at 122.
 
 I Disentitlement
 
 8
 The principal question before us is whether the doctrine of disentitlement--that holds a person who is a fugitive from justice may not use the resources of the civil legal system while disregarding its lawful orders in a related criminal action--should bar appellant from participating in the civil forfeiture proceedings. Appellant asserts that he is not a fugitive from justice and that, even if he is, the doctrine should not apply in his case.
 
 A. Fugitive Status
 
 9
 Eng declares in his brief that he is a fugitive, if at all, only "by the barest of legal fictions." To the contrary, that Eng is a fugitive rests on sound, legal footing, not on fictions. In United States v. Catino, 735 F.2d 718 (2d Cir.), cert. denied, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984), the defendant, an American, was convicted and sentenced for narcotics trafficking in the Southern District of New York, but fled to France prior to his surrender date. While abroad he was arrested and held to answer charges under French law, pursuant to a provisional arrest warrant issued at the request of the United States. Catino resisted United States efforts to extradite him. During the pendency of the extradition proceedings, he was convicted on the French charges and sentenced to five years in prison. The French government then opposed the United States' extradition request on the ground that Catino had already been convicted in France for the same criminal conduct alleged against him by the United States. Extradition was subsequently denied. After serving his sentence in France, Catino was expelled from that country and returned to the United States where he was promptly arrested. Id. 735 F.2d at 719-21.
 
 
 10
 Catino contended, in his Southern District trial on charges of bail jumping and securing a passport under a false name, that the statute of limitations barred the government from prosecuting him. The prosecution argued that the statute of limitations was tolled on these charges pursuant to 18 U.S.C. § 3290 because Catino was a fugitive during the relevant period. Fleeing from justice does not, as the words literally connote, mean a person "on the run." One may flee though confined in prison in another jurisdiction. Fleeing from justice is not always a physical act; it may be a state of mind. When a person purposely leaves the jurisdiction or decides not to return to it, in order to avoid prosecution, he is a fugitive. See 735 F.2d at 722. Thus, a defendant with notice of criminal charges who actively resists returning from abroad to face those charges is a fugitive from justice, even when he has no control over his physical movements because of being imprisoned in a foreign country. See id.; accord United States v. Marshall, 856 F.2d 896, 900 (7th Cir.1988); Schuster v. United States, 765 F.2d 1047, 1050 (11th Cir.1985); United States v. One Lot of U.S. Currency Totalling $506,537, 628 F.Supp. 1473, 1475-76 (S.D.Fla.1986).
 
 
 11
 Since his Hong Kong arrest in August 1989, Eng has resisted extradition and has refused to sign an affidavit stating that he wished to return to the United States to contest the civil forfeiture action. In addition, in June 1990 his counsel advised the trial court that if Eng successfully defeated extradition he would in all likelihood not return to the United States voluntarily. Plainly, appellant has not done all within his power to return to this country; rather, he has done everything possible to resist returning. Consequently, Eng was correctly held to be a fugitive from justice.
 
 B. Disentitlement Doctrine
 
 12
 We turn now to discuss the doctrine of disentitlement. In Molinaro, 396 U.S. 365, 90 S.Ct. at 498, the criminal defendant had escaped while his direct appeal was pending before the Supreme Court, which thereupon summarily and unconditionally dismissed the appeal, observing that a court should not deal with the merits of an appeal while the defendant who seeks review of the conviction deliberately absconds from the legal restraints imposed as a result of the same conviction. Such flaunting of the legal system disentitles that defendant from calling upon the system's resources to determine his claims. Id. at 366, 90 S.Ct. at 498-99; see also United States v. Baccollo, 725 F.2d 170, 171 (2d Cir.1983). The disentitlement doctrine, which may be invoked at the discretion of the court, is grounded on the impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him. See 396 U.S. at 366, 90 S.Ct. at 498-99.
 
 
 13
 The Supreme Court has never extended Molinaro to civil matters relating to a criminal fugitive, though this and other circuits have done so on a number of occasions. See, e.g., United States v. $45,940 in United States Currency, 739 F.2d 792, 797-98 (2d Cir.1984); United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami, Dade County, Florida, 868 F.2d 1214, 1216-17 (11th Cir.1989); United States v. $129,374 in United States Currency, 769 F.2d 583, 587 (9th Cir.1985), cert. denied sub nom. Geiger, Conservator of the Estate of Geiger v. United States, 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986); Doyle v. United States Dep't of Justice, 668 F.2d 1365 (D.C.Cir.1981), cert. denied, 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); Broadway v. City of Montgomery, Alabama, 530 F.2d 657, 659 (5th Cir.1976); United States ex rel. Bailey v. United States Commanding Officer, 496 F.2d 324, 326 (1st Cir.1974). The only holding arguably to the contrary is United States v. $83,320 in United States Currency, 682 F.2d 573 (6th Cir.1982). The primary concern of the Sixth Circuit in that case, as the district court noted, was that if the disentitlement doctrine is applied too broadly to in rem proceedings it might jeopardize the rights of others who, in addition to the fugitive, seek to file claims. See 682 F.2d at 576; 745 F.Supp. at 122. That danger does not exist in the case at hand where the trial court solicited claims from third parties. Accord $129,374, 769 F.2d at 589 (rejecting $83,320 's concern where notice is provided to other interested parties); $45,940, 739 F.2d at 797-98.
 
 
 14
 In $45,940 in United States Currency, the criminal defendant/civil claimant, McKay, was arrested, jailed, and deported for making an illegal entry into the United States from Canada. At the time he was arrested, he was carrying $45,940 in currency, which was seized. He was subsequently indicted for making a false statement to the U.S. Customs Service regarding the amount of currency he possessed when he crossed the border. Later, he filed a verified claim to the currency and answered the government's in rem complaint--seeking forfeiture of the currency--but refused to appear at his arraignment on the related criminal charge. The government contended that because McKay refused to leave Canada for his arraignment here, he was a fugitive and disentitled from contesting the civil forfeiture action. McKay's response was the government made no attempt to extradite him, and he had previously been deported from this country and barred from reentering for one year following his deportation. He asserted, as a consequence, he was not a fugitive and was entitled to participate in the forfeiture action.
 
 
 15
 We rejected McKay's arguments. The burden, we noted, was on the person who has absented himself from the United States--voluntarily or not--to seek readmission, even for the limited purpose of appearing at his arraignment. 739 F.2d at 795-96. Thus, we held McKay was a fugitive from justice who had waived his right to due process in the civil forfeiture proceeding. Id. at 798. See also, e.g., $129,374, 769 F.2d at 587-88.
 
 C. Application of Doctrine
 
 16
 Eng makes two substantially similar arguments as to why the doctrine should not apply in this case. Neither has merit. First, he proposes that this case is distinguishable from $45,940 in United States Currency because, unlike the claimant in that case, Eng did not initiate the proceedings below by filing a claim seeking return of his seized property. In other words, appellant's argument is that because it is the government that has initiated the proceedings by bringing the forfeiture action and seeking extradition, it is not fair to say that appellant is seeking to have it both ways by using the resources of the United States courts only when it is to his advantage. Appellant argues he was forced into this position by the government's action and should not be punished by the application of the disentitlement doctrine.
 
 
 17
 Who initiates the proceedings is irrelevant under Catino and $45,940. Both cases stated that when a person actively resists extradition, or refuses to appear at his arraignment, he has constructively fled the United States and thus is a fugitive. See 739 F.2d at 796; 735 F.2d at 722-23. So long as Eng continues to resist extradition, he has constructively fled the country and remains a fugitive subject to the disentitlement doctrine regardless of which party initiates the civil proceeding. See One Parcel of Real Estate, 868 F.2d at 1217; cf. $129,374, 769 F.2d at 589 (requirements for application of disentitlement doctrine satisfied where criminal defendant had notice of forfeiture proceedings and elected to flee the court's jurisdiction).
 
 
 18
 Second, and in a similar vein, Eng argues that, unlike McKay in $45,940, he is in a "defensive posture" in the civil forfeiture action in this case. Eng's motion filed in the district court undercuts that argument because it seeks affirmatively to litigate his as yet unidentified "interest" in the defendant properties and specifically requested the district court (1) summarily to release the properties pursuant to the Admiralty and Maritime Rules, (2) dismiss all the government claims against properties located outside the Eastern District of New York, and (3) stay the civil action pending the conclusion of the criminal proceedings. These motion papers definitively demonstrate that Eng has done more than lay supine in the face of government's efforts.
 
 
 19
 Even were appellant in a purely defensive posture procedurally, such is not a relevant consideration for purposes of the disentitlement doctrine. The doctrine operates as a waiver by a fugitive of his due process rights in related civil forfeiture proceedings. See $45,940, 739 F.2d at 798. Appellant by his own actions as a fugitive disentitles himself from raising an objection to the forfeiture proceeding. See One Parcel of Real Estate, 868 F.2d at 1217.
 
 
 20
 Consequently, Eng's arguments as to which party initiated the action and what his procedural posture is in that action have no bearing on the applicability of the disentitlement doctrine once his status as a fugitive and the relatedness of the property to the criminal activity are established.
 
 
 21
 The First Circuit's decision in United States v. Pole No. 3172, Hopkinton, 852 F.2d 636 (1st Cir.1988) is not to the contrary. There the court concluded that the disentitlement doctrine should not be applied and that the defendant should be permitted to maintain a claim to property seized by the government. Although the court stated that the defendant, though technically a claimant, could not "be deemed to be in the customary role of a party invoking the aid of a court to vindicate rights asserted against another," id. at 643 (quoting Societe Internationale v. Rogers, 357 U.S. 197, 210, 78 S.Ct. 1087, 1094-95, 2 L.Ed.2d 1255 (1958)), we do not read the decision to apply the doctrine as turning on the defendant's procedural posture in the case. Rather, Pole No. 3172 merely held that the disentitlement doctrine is not applicable where the defendant's status as a fugitive is not sufficiently related to the civil forfeiture and the defendant had no notice of the criminal proceeding at which he failed to appear. 852 F.2d at 644. Neither of these factors are present in the instant matter. Accord, e.g., One Parcel of Real Estate, 868 F.2d at 1216 (dismissing claim to property brought by fugitive where "[t]he in rem forfeiture action against the defendant real property is unquestionably related to the appellant's indictment for drug trafficking").
 
 
 22
 In its complaint and amended verified complaint in rem, the government has detailed the transactions through which Johnny Eng purchased the subject defendant properties. It has alleged that the defendants were purchased with proceeds of narcotics transactions engaged in by Eng. Hence, the civil forfeiture action clearly involves property related to the criminal indictment against appellant and--due to Eng's fugitive status--satisfies the requirements of the disentitlement doctrine.
 
 
 23
 Eng next argues that, even if the disentitlement doctrine is applicable, the district court misinterpreted its nature and scope by failing to realize that its application is discretionary. Appellant insists the district court refused to exercise its discretion by default when it ruled in the government's favor. Our review of the record shows that counsel for Eng most ably argued the discretionary nature of the doctrine. The trial court was therefore well aware that it had discretion to hear Eng, and by declaring Eng disentitled, it used language indicating a discretionary decision: "Eng is a fugitive from justice, and this court will not stay a civil case pending the outcome of a criminal matter in which he hopes never to appear." 745 F.Supp. at 120. Judge Raggi did not say she had no power to hear Eng, but stated instead she had chosen not to hear him. Appellant may decide to waive extradition and return to this country to face the charges against him. In the meanwhile his refusal to do so disentitles him from litigating in federal court his civil claim to property connected to these criminal charges.
 
 
 24
 Eng also argues that his assertion of rights traditionally associated with due process under the terms of the United States extradition treaty with Hong Kong converts his attempt to fight extradition into an attempt to assert affirmative constitutional claims, thereby making this the sort of case in which a court should exercise its discretion to hear the fugitive's case. We disagree that the case is either unusual or that defendant's invocation of constitutional rights should tip the scales in favor of allowing his case to be heard. Appellant is entitled to all of his due process rights once he returns to stand trial. None of his constitutional rights are given up by waiving extradition. His remedy as a fugitive is to forego that status and promptly avail himself of his right to a speedy and public trial guaranteed him under the Constitution. See United States v. Weinstein, 511 F.2d 622, 629 (2d Cir.1975).
 
 II Statutory Standing
 
 25
 We address Eng's remaining assertion that he adequately met statutory standing requirements. The provision governing the seizure of property subject to civil forfeiture, 21 U.S.C. § 881(b) (1988), provides that property may be seized "upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims." Admiralty Rule C(6) states that a claimant asserting rights in property that has been seized and that is the subject of a forfeiture action in rem must file a claim within ten days after process has been executed or within such additional time as the court may allow. The filing of a verified claim is an essential element in establishing standing to challenge a forfeiture under Rule C(6). See Mercado, 873 F.2d at 645; United States v. United States Currency in the Amount of $2,857.00, 754 F.2d 208, 213 (7th Cir.1985).
 
 
 26
 Eng never filed a claim under Admiralty Rule C(6). Instead, he filed a motion for an order to show cause why the properties should not be summarily released from arrest. He now argues that the government did not provide him with notice of the forfeiture action until eight days after the period for filing a verified claim had expired. Yet, he filed his motion for an order to show cause on March 15, 1990, the very same date on which he contends the time to file a verified claim expired. It follows logically that actual notice of the forfeiture action was given within sufficient time in order for Eng to have filed a verified claim, had he so desired. Moreover, compliance with Rule C(6) is not complicated, and the trial court might well have been inclined to allow appellant to file an untimely claim, particularly in view of his incarceration in Hong Kong.
 
 
 27
 Claiming that he is nonetheless excused from compliance with the statutorily mandated process, he relies on United States v. Premises and Real Property at 4492 South Livonia Road, Livonia, New York, 889 F.2d 1258 (2d Cir.1989). There we held that a claimant who demonstrates sufficient interest in the property by filing motion papers with the court may be excused from technical noncompliance with the rules governing the filing of claims. But Livonia Road does not control here. Claimant there made the requisite showing that he possessed an interest in the subject property. Quite the contrary, Eng's interest in the property subject to the civil in rem action is indefinite and undetermined, described by his counsel only as his "interest, if any, in the defendant properties."
 
 
 28
 Appellant also declares that he did not file a verified claim, and did not move for leave of court to file an untimely claim, because filing a verified claim would have waived the motion for an order to show cause, citing Cactus Pipe & Supply Co., Inc. v. M/V Montmartre, 756 F.2d 1103 (5th Cir.1985). Cactus Pipe stands for the proposition that the filing of a claim by the owner of property confers in rem jurisdiction over the property because the owner's unconditional claim constitutes an appearance on its behalf. Id. at 1108, 1110. We fail to see how this supports appellant's present argument that filing a claim would have waived the motion for an order to show cause. Further, Cactus Pipe stated that the filing of a claim without any jurisdictional objection within or prior to the pleading constituted an appearance on the part of the claimant. Id. at 1110. Nothing said in that case prohibited Eng from bringing his motion for an order to show cause or caused him to waive it if he chose to file a subsequent claim. In any event, before he could make such a motion, it was necessary for him to file a verified complaint in the forfeiture action in order to establish his standing in that case. Having failed to file the verified claim, Eng has no statutory standing under Rule C(6) to challenge the forfeiture of the property.
 
 
 29
 Because Eng is disentitled from participating in the civil forfeiture action, and lacks as well the requisite statutory standing, it is unnecessary for us to address his argument that the district court lacked jurisdiction over the defendant property not within the Eastern District of New York.
 
 CONCLUSION
 
 30
 The order dated August 21, 1990, and the resulting default judgment in favor of the United States entered by the Clerk of the Court on August 30, 1990 are, in all respects, affirmed.
 
 
 
 *
 Hon. Daniel M. Friedman, U.S. Circuit Judge for the Federal Circuit, sitting by designation